(28 Misc. Rep. 716.)

JEWELERS' LEAGUE OF NEW YORK v. HEPKE et al.

(Supreme Court, Special Term, New York County. August, 1899.)

MUTUAL INSURANCE—BENEFICIARY—DESIGNATION—CREDITOR.

 A member of a mutual benefit association, the object of which was to provide a fund for the dependent relatives of deceased members by means of assessments upon the surviving associates, on the death of his wife, who for 12 years had been the beneficiary named in the certificate, executed a will whereby he bequeathed all his insurance to his daughter. There was no evidence that he had any insurance other than that in the association. After borrowing about one-eighth of the amount of his benefit certificate from one H., he had the name of the beneficiary in the certificate changed so that it was payable to "H., creditor." Thereafter H. paid some assessments on the certificate. *Held*, that H. was a beneficiary under the certificate only to the extent of the money advanced by him to the insured, and in the payment of assessments, and that the daughter was entitled to the balance after repaying his advances.

Action of interpleader by the Jewelers' League of New York against Conrad Hepke and others to determine to whom the proceeds of a mutual life insurance association policy should be payable. Judgment that a part thereof be paid to the defendant Conrad Hepke, and that the balance thereof be paid to the defendant Thekla Becker.

Abel Crook, for plaintiff.

W. R. Beach, for defendant Hepke.

R. J. Morrison, for guardian ad litem of infant.

E. H. Childs, for executors.

RUSSELL, J. In this action of interpleader, the defendant Conrad Hepke, whose relation to the benefit association or the fund in controversy is that of creditor and alleged purchaser from Becker, the deceased creator of the fund, claims the whole amount of $5,000 upon advances to Becker of $635, to the total exclusion of the only child of the deceased, his daughter, Thekla. The plaintiff association, which pays over the fund, the executors of the deceased, and the guardian ad litem, unite in urging that Hepke should be paid only the advances and interest, and the rest go to the daughter.

The object of the plaintiff association in its existence is to provide a fund for the dependent relatives and friends of deceased members by means of assessments upon the surviving associates. In 1884 Becker applied for membership, designating his wife, Katie, as beneficiary. A certificate was issued to him accordingly, and for 12 years he paid all of the assessments levied upon him. In the year 1896 he and Hepke were interested in some kind of an organization called the Anti-Semitic League, and Becker, being either the most enthusiastic or the least prudent, assumed to raise some funds for the expenses of that league. On the 20th of October, 1896, Hepke loaned Becker $300, and Becker procured a change of beneficiary, so that the wife would be designated to the extent of four-fifths and Hepke one-fifth. It is conceded that this change was to secure Hepke, so that, if no further change had been made, on Becker's death Hepke would have been paid $300, with a few month's inter-

est, and no more.  July 5 or 6, 1897, the beneficiary wife died, and on the 10th of that month Becker executed a will giving all of his estate, including all insurance moneys, to the child, Thekla.  There is no sufficient evidence that he had any other insurance in force than the benefit certificate here involved, or that he had any other estate whatever.  On the 30th of November, 1897, Hepke advanced Becker $300 more, and the latter procured another change, by naming "Hepke, creditor," as the beneficiary.  Within a month Hepke paid $35 of assessments, making his entire advances to or for Becker $635.  On the 11th of February, 1898, Becker died, and 10 days later Hepke furnished the Jewelers' League with proofs of death.  He at once claimed the whole $5,000, but on the 5th of March, 1898, wrote to the league, requesting the payment of $500 to $600.

Under its constitution and by-laws, the plaintiff had the right, upon the death of the beneficiary, to select another as the one most dependent on the deceased in its judgment, if he had not selected a successor.  On the 3d day of January, 1899, the executive committee of the plaintiff resolved that the daughter was the most dependent on her deceased father, and was entitled to the $5,000 after payment of the amount due to Hepke as creditor.  It took this action fully recognizing that the beneficiary, under its constitution and by-laws, might be any one with an insurable interest in the life of the deceased, and that such action would have no legal effect in case, by the death of Becker, the right of Hepke to the whole fund became absolute.

We have thus the case before us of a benefit certificate which for 12 years the deceased kept up for the benefit of the wife, who at his death might be left destitute with their young and helpless daughter, during which period the contributions of the deceased husband and father went to pay his share to swell the benefit funds for other widows and children.  The wife dies; he soon follows her to the grave; the 12 year old orphan daughter goes to an orphan asylum for maintenance; and the creditor claims that the benevolent fund passes wholly to him, on the theory that he did not take the certificate simply as a just creditor only asking reimbursement for his advances, but as one who bought a speculative hazard on the life of the father, and in three months thereafter becomes entitled absolutely to the whole sum of $5,000, paying therefor at the ratio of 1 to 8.  The testimony of the witnesses who heard portions of the negotiations between Hepke and the deceased is somewhat vague and contradictory.  Hepke relies on this trial largely on the declarations of the deceased, not forming a part of the res gestæ of the transaction, as to the desire to sell out his policy, and as to having sold his policy to Hepke.  How far those declarations are competent evidence to destroy the rights of a beneficiary designated by the league, being one who does not succeed to a right in the certificate as next of kin to the personal property of the deceased, may be open to question.  Reconciling, however, all of the conflicting statements of the witnesses so far as possible, the undisputed facts afford a satisfactory presumption that the designation by Becker was only a transfer of sufficient for creditor protection to Hepke, and left the remaining benevolent

protection to the orphan dependent child. In an organization like the Jewelers' League, it may be very well to allow to a creditor a beneficial interest in the life of the deceased. That creditor may have advanced, as Hepke partially did in this case, the very sum necessary to continue the provision for death. But here the creditor's interest ceases. The just motive is for security. The life or death of the debtor, beyond this interest, is to him no more than that of any one else. A stranger might as well intervene and gamble on the chance in which death became the winning hazard. The objects of this association are undoubtedly variant from those of life insurance companies. The latter organizations may well, by skillful choice of lives and acute energy, swell capital funds far beyond the reserve necessary to protect the insured, and may well issue annuities and endowment policies as well as incidental provision for dependence upon the life of the insurer. But fraternal benevolent associations limit the contributions and burdens of living associates to the sums required to provide for protection to those who need protection when the pillar of the household shall have passed away. We may well doubt whether the Jewelers' League might not justly claim that others than dependents could not demand from its funds anything beyond indemnity, and that bargains and sales of its benevolent contribution upon the chance of life were antagonistic to the whole scheme of its order. But it is not necessary to decide whether this benefit certificate was the subject of bargain and sale. The point is alluded to in order that the thing Hepke and Becker were contracting in respect to may be considered as both knew it to exist. Presumably of ordinary business experience and intelligence, each knew the object of those certificates, and the means by which they would be rendered valuable. All through the negotiations in regard to the advance of money, Hepke insists on security. In his final designation of beneficiary he still retains his title of creditor, and so advises the league that he remains the creditor, which could only be the case if Becker still owed him for the two advances. He, perhaps, little dreamed of the change which was so near, by which the whole sum would be payable, and did no decisive act to indicate a claim to the whole fund until the prospect opened by which he could obtain presently the sum of $5,000 with but a small proportionate cost to himself. Nor do I see any reason to believe that Becker at any time viewed the transaction as beyond his power of recall by restitution and change of the beneficiary. This view is somewhat corroborated by the position taken in the thorough brief of the counsel for Hepke. In his brief he says:

"Undoubtedly Becker had it in his power by a stroke of his pen, at any time prior to December 3, 1897, to substitute his daughter as beneficiary, subject to Hepke's then existing rights; and had he proceeded to do so, pursuant to section 2, art. 6, of the constitution, she would have had a clear inchoate right in the equity in the fund,—subject, of course, to revocation by her father during his lifetime."

The date referred to is not the date of the request for a change of the beneficiary to Conrad Hepke, creditor, which was November 30, 1897, but is the date when the executive committee ordered the

change to be made on the books of the company. Therefore the position claimed by the counsel for Hepke is that up to December 3, 1897, Hepke's interest was only that of a creditor for reimbursement, but that the association had the power to change that relation to absolute purchaser, and that they did so, although the information came to them that Hepke was still seeking to be named as beneficiary simply as creditor. Hence Hepke must claim that he only acquired the pecuniary rights of reimbursement when the name of the beneficiary was changed on the books of the league and thereafter, because Becker died having made no change in the name of his beneficiary, Hepke's position is transferred from that of a creditor to beneficiary of the whole. The question here does not arise between Hepke and the league, but between Hepke and the infant daughter. The foundation of his claim is that he has pecuniary rights through his advances as a secured creditor or as a purchaser. The evidence shows the acts of the parties to have proceeded upon the theory of protection to Hepke by a fund which might not be payable in many years, and, that object accomplished, Hepke must remain satisfied.

Some authorities are here referred to as bearing upon the questions discussed. A benevolent fund like this is not a part of the estate of the deceased, with all the usual attributes of assignability, and is not liable for debts of the deceased, but may be recovered for proper distribution to next of kin, who are presumably the nearest to the deceased, in an action brought by his administratrix. Bishop v. Grand Lodge, 112 N. Y. 627, 20 N. E. 562. A change of beneficiary is permissible as between the two claimants for the fund. Moan v. Normile, 37 App. Div. 614, 56 N. Y. Supp. 339. There can be no vested interest in these beneficial certificates, beyond the amounts which equity requires to be paid, and therefore a change of certificate to another person than the first beneficiary may be made. Sabin v. Phinney, 134 N. Y. 423, 31 N. E. 1087. Even in a policy of life insurance held as collateral security, the payment of the indebtedness for which the policies were pledged releases the interest of the creditor. Babcock v. Bonnell, 80 N. Y. 244. A fortiori, a beneficiary named as the payee of a benevolent fund loses all right to the fund when his standing as a creditor ceases, and the fund goes to its primary object. And the conclusion is that justice requires the payment of the advances of $635, with interest; that no other part be diverted to turn a benign benefit certificate into a gambling policy of insurance; and the main portion of the fund represented by that certificate goes to the needy child, according to the will of the father and the action of the league; and thus the change of beneficiary accomplishes all it was intended for, and works no injustice. Ordered accordingly.