JOHN D. McMASTER, as trustee in bankruptcy of John A. Heinrich, complainant-respondent,

*v.*

EMMA R. HENKEL and JOHN A. HEINRICH and MARIE T. HEINRICH, his wife, and WESTFIELD ROAD HOUSING CORPORATION, a New Jersey corporation, defendants-appellants.

[Submitted October term, 1937. Decided January 26th, 1938.]

*Mr. Earl A. Merrill,* for the appellants.

*Mr. Robert A. Licks,* for the respondents.

The opinion of the court was delivered by

LLOYD, J.

The bill in this case was filed by a trustee in bankruptcy to set aside a conveyance of real property made by the bankrupt and the transfer of certain mortgages on the ground that the transfers were fraudulent as to creditors. There was a decree in favor of the complainant and the defendants appeal.

The transfers were made on November 28th, 1932, in consideration of the cancellation of an indebtedness to the amount of $7,500. Three and one-half years later the defendant Heinrich went into voluntary bankruptcy and the trustee filed the present bill.

Heinrich had previously been employed by the Bush Terminal Company at a salary of $10,000 a year. In the same employ for many years was Emma R. Henkel as office manager and executive secretary at a salary beginning in 1916 at $150 per month and gradually increasing to $3,000 a year.

Heinrich was the holder of considerable real estate, mostly unimproved, and a number of small mortgages some of which were pledged as collateral for loans.

During the period from 1923 on Miss Henkel, who was Heinrich's subordinate in the Terminal Company, was loaning him money in various amounts which he was using in the development of his lands. The greater part of these loans is shown in checks either proved to have passed to him directly or through the deposit of her checks in his account. That she had funds available as early as 1922 is disclosed by letters from the various banks in which she kept her accounts showing approximately at that date the deposit of funds aggregating $4,000. Ultimately these loans reached large proportions, and Miss Henkel sought to be secured and the transfers were made in cancellation of the debt to the extent of $7,500.

Our Uniform Fraudulent Conveyance act, section 10, chapter 2 of title 25 (Revision of 1937) provides that "every conveyance made * * * by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made * * * without a fair consideration," and section 9 provides that "when in exchange for such property * * * as a fair equivalent therefore and in good faith, property is conveyed or an antecedent debt is satisfied," the transaction is not fraudulent.

If, therefore, either the transfers did not render Heinrich insolvent or if there was the cancellation of a just antecedent

debt, the bill could not be maintained. In the present case it is difficult to find any proof of insolvency, the first essential of complainant's proofs, at the time of the transfers. There was proof that Heinrich had, according to his own estimate, approximately $80,000 worth of property, as against an indebtedness of $20,000. A witness, not an expert, called by the complainant testified that he did not accept these figures, and this appears to be the extent of proof as to insolvency. But whether insolvent or not it is of no consequence if, as the statute provides, a fair consideration is given for that which is parted with. On this latter point the complainant offered no evidence whatever but rested upon the burden which it assumed the defendant bore, and which if it existed, we think was fully met.

Because the deed expressed a consideration of $1, the learned vice-chancellor deemed the burden was on the defendant to establish the *bona fides* of the transfer.

The rule is of doubtful application in the present case for the reason that attached to the deed was the placement of federal tax stamps importing a consideration of $7,500, the exact amount of canceled debt. In the case of *Babirecki* v. *Virgil, 97 N. J. Eq. 315,* this court held that where no consideration was paid at the time of the conveyance and the consideration expressed in the deed was but $1 with revenue stamps corresponding with such consideration, that in an attack upon the conveyance as fraudulent the burden would be shifted. It is to be noted that in that case there was a demonstrated want of consideration. In the present case it was demonstrated to the contrary by the placing of the federal stamps that the consideration was $7,500. It is idle to suppose that parties to a conveyance would use revenue stamps beyond the amount necessary to represent the true consideration. In this situation the world was apprised of the true amount by the stamps used and it might well be that the burden of proving the want of consideration remained as is usual in charges of fraud on the complainant, but it is not necessary to so decide.

Even assuming the law to be otherwise, careful consideration of the proofs of the defendants in the case we think demonstrates the truth of the evidence presented by them. In the present case the defendants were, so far as appears, persons of unimpeached character holding high and responsible positions in a large business institution. There is no taint on their character, no impeachment of their testimony unless it be found in the testimony itself. It must be remembered that fraud will not be lightly assumed.

To meet this burden of proof, whether rightly or wrongly imposed, the books of account of both Heinrich and Miss Henkel covering the intervening period, as also the checks, stubs and bank statements were tendered in evidence and disclosed in detail the individual items aggregating the total. Both of the parties to the transaction testified to the *bona fides* of this indebtedness and there seems to be no attack on the fairness of the transaction as to the consideration assuming the existence of the indebtedness.

That the transfers were fair and free from fraud is not only established by the testimony of the defendants, but by the conduct of Heinrich's creditors themselves. At the time his indebtedness as already noted was not large in comparison to the apparent worth of his property. His major obligations were to the Colonial Trust Company in the sum of $8,000, secured by collateral, and to his employer in the sum of approximately $5,800. Neither the Bush Terminal Company with whom he had recently ceased employment, nor the few small claims that otherwise existed, were pressing him.

In the spring of 1936, after three and one-half years, comprising possibly the worst period real estate in this country has ever experienced, Heinrich, finding himself unable to go on, filed a voluntary petition in bankruptcy and it was upon the advent of this proceeding that it remained for the trustee in bankruptcy to attack a conveyance of which for the intervening period no creditor had made complaint, and during which period Miss Henkel had constructed a dwelling on the land of sufficient value to rent for $50 per month.

It is stated that Miss Henkel did not testify in her own behalf. This statement is calculated to give a wholly misleading impression. The facts are that Miss Henkel was thoroughly and critically examined in the bankruptcy proceeding and her evidence as there given was introduced by the complainant himself before the vice-chancellor in the trial of this case. In that testimony she had covered and accounted for the various items of the indebtedness. There was nothing further that she could do; repeating the testimony would serve no useful purpose, and if the complainant desired that she be further interrogated he was at liberty to question her.

So with the statements of Heinrich to the bank in 1930 and 1931 as to his indebtedness. These were explained by him as intended to refer to mortgage indebtedness only, a type of security which he had pledged with the bank. Whatever the intention it of course could not affect the title of the vendee. It could only go to the credibility of Heinrich and with the explanation given we consider this an insufficient basis upon which to predicate the discrediting of the voluminous proofs both oral and written tending to establish the *bona fides* of the debt.

Viewing the case as a whole it is easy to read between the lines that the creditor trust company with its small ultimate balance of $2,500 (it having foreclosed its mortgage without realizing its debt in full) seeks to effect collection through the destruction of a title which it acquiesced in for three and one-half years with knowledge that the vendee was making valuable improvements on the lands conveyed. A charge of fraud under such belated claim does not commend itself to judicial consideration.

The decree is reversed, with direction that the bill be dismissed.

*For affirmance*—PARKER, CASE, BODINE, PERSKIE, HETFIELD, JJ. 5.

*For reversal*—LLOYD, DONGES, HEHER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 8.