On May 26th, 1936, one Elizabeth Balabas presented to the complainant, Middlesex County Welfare Board, a verified application for old-age assistance in which she declared that she owned or possessed no assets, real or personal, other than a burial plot and an insurance policy of a fraternal society in the amount of $200. To the question "Have you within the last five years disposed of real estate, money in bank, or other property by sale, assignment, gift or otherwise?" she replied, "Sold in Sheriff's sale." She executed and delivered to the complainant the requisite collateral assignment and agreement to reimburse. A "certificate of notice of agreement to reimburse" and a "certificate to reimburse" were thereafter filed by complainant in the Middlesex County clerk's office in pursuance of the pertinent statute. The former was filed on October 10th, 1936, the latter on March 20th, 1942. Mrs. Balabas obtained pecuniary assistance in monthly payments from September 1st, 1936, to September 30th, 1940, aggregating $1,382.18. She died testate on October 30th, 1940.
In the course of the administration of her estate, the complainant ascertained that at the time of the decedent's application for old-age assistance, there were eight other existing policies of insurance payable upon the event of her death to her estate, and that she had thereafter effectuated a change of beneficiary in four of them, designating the defendant Caroline Szabo as the beneficiary of two policies issued by *Page 325 
the Colonial Life Insurance Company, and the defendant William Balabas as the beneficiary of two issued by Metropolitan Life Insurance Company. The remaining four policies continued to be payable to her estate. Moreover, it was discovered that by a deed dated September 6th, 1934, and recorded on November 5th, 1934, Mrs. Balabas had conveyed to Caroline Szabo two tracts of real estate situate in the Borough of Metuchen.
On September 18th, 1939, Mrs. Balabas executed a will in which she then purposed to bequeath to Caroline Szabo "the funds from the insurance policies carried on my life," specifically listing the eight policies. Her last will and testament was executed on October 14th, 1939, and its probate has been affirmed by the Middlesex County Orphans Court. The defendant Abraham L. Motolinsky is the administrator cum testamento annexo of the decedent's estate.
The following paragraphs of the will are somewhat illuminating:
"First: I direct that my body decently interred in the Our Lady of Hungary Rom. Catholic Church cemetery, according to the rites and ceremonies of that Church, that my funeral expenses shall not be less then $400.00, and that my Funeral Director shall Mr. John Mitruska of Perth Amboy, N.J.
"Second: I hereby give and beueath to my son BELA BALABAS MATOSZ of 68 Henry St., Fords, N.J., and Caroline Szabo of 43 Lincoln Ave., Metuchen, N.J., in equal alike shares the funds from the insurance policies carried on my life in the following companies:
Metropolitan Life Ins. Co., Policy No. 122505783 .............. $255.00
Metropolitan Life Ins. Co., " 119350359 .............. 400.00
Metropolitan Life Ins. Co., " 121251763 .............. 184.00
John Hancock Life Ins. Co., " 26086678 .............. 400.00
The Prudential Ins. Co., " 105792057 .............. 400.00
The Prudential Ins. Co., " 103319979 .............. 500.00
The Colonial Life Ins. Co., " 3468046 .............. 180.00
The Colonial Life Ins. Co., " 3402078 .............. 300.00

Upon condition that after my decease, all expenses for my burial in the plot owned by me, and a headstone over my grave with necessary inscriptions thereon for the cost of not less than $100.00, first to be deducted from the total of aforesaid funds. I am bequeating into Mrs. Carolina Szabo who is a stranger to me other wise because during my lifetime she rendered aid and assistance to me, and faithfully paid from her own fund a large part of the premiums on the aforesaid policies." *Page 326 
By means of an agreement designed to more promptly liberate the insurance companies from their acknowledged liabilities and likewise shield the adverse claims of these defendants pending eventual solution, the insurance companies entrusted the proceeds of the policies amounting to $2,753.91 to the administrator of the assured's estate, who sought by petition to have the Middlesex County Orphans Court determine "the ownership of said funds in dispute" and "instructions by the court as to the distribution of said funds."
The complainant thereupon filed the present bill charging fraudulent practices by Mrs. Balabas, Caroline Szabo and William Balabas, as well as other causes of action cognizable by this court, and praying that the proceeding in the Orphans Court be enjoined and that a decree be made by this court in effect impressing a lien upon the proceeds of the policies and upon the parcels of real estate previously conveyed, to secure the reimbursement of the complainant.
True, this court will not ordinarily assume jurisdiction where a proceeding involving the same subject-matter has already been instituted in another court, and in which proceeding a complete and adequate adjudication of the rights and remedies of the parties can be accomplished. Lewis v. Morgan, 132 N.J. Eq. 343; 28 Atl. Rep. 2d 215.
Significantly, the decedent's estate has not been decreed to be insolvent and therefore it was not manifest that the Orphans Court had jurisdiction to adjudge the rights of these parties to the fund, to judicially determine their respective shares and to afford the desired equitable remedies (liens) sought by the complainant as a creditor of the estate and by the defendants Szabo and Balabas arising from the alleged payment by them of premiums.
It has been resolved that the Orphans Court lacks jurisdiction (except in the case of insolvent estates) to hear and determine the validity or extent of claims of creditors against a decedent's estate. Miller v. Pettit, 16 N.J. Law 421;Vreeland v. Schoonmaker, 16 N.J. Eq. 512; Middleton v.Middleton, 35 N.J. Eq. 115; Partridge v. Partridge, 46 N.J. Eq. 434; 19 Atl. Rep. 662; affirmed, 47 N.J. Eq. *Page 327 601; 22 Atl. Rep. 1075; Mullaney v. Mullaney, 65 N.J. Eq. 384,387; 54 Atl. Rep. 1086; In re Fulper, 99 N.J. Eq. 293;132 Atl. Rep. 834. The claim of an alleged cestui que trust to establish a trust in his favor as against a portion of the apparent assets of the decedent in the hands of the representative was declared to be extraneous the jurisdictional orbit of the Orphans Court. In re O'Callaghan, 64 N.J. Eq. 287;51 Atl. Rep. 64. Similarly, a claim by an alleged donee who asserted a title to a portion of the assets of the estate by virtue of an inter vivos gift was held to be beyond the range of the jurisdiction of an Orphans Court. In re Campfield'sEstate, 98 Atl. Rep. 381. See, also, In re Estate of JamesMcSpirit, 73 N.J. Eq. 613; 68 Atl. Rep. 755.
The proceeding undertaken in the Orphans Court did not involve a controversy concerning the fairness and correctness of the inventory or the allowance of the account of the administrator, nor is the present controversy one between the decedent's estate and the administrator in his assertion of a personal claim to assets in hand. The parties Caroline Szabo and William Balabas base their respective demands as beneficiaries upon the terms of the policies. Additionally, they invoke equities arising from the alleged payment by them of the premiums on the policies. Vide,Metropolitan Life Insurance Co. v. Mangravite, 120 N.J. Eq. 574; 188 Atl. Rep. 445; Gifford v. Gifford, 93 N.J. Eq. 299;115 Atl. Rep. 654. The complainant is a creditor seeking relief of a specific fashion.
The following statutory provision (R.S. 3:26-2; N.J.S.A.3:26-2) did not supply the Orphans Court with the necessary jurisdiction:
"When an executor, administrator with the will annexed or testamentary trustee has filed an account showing the balance of the estate in his hands at the date of filing, and the account has been allowed by decree of the court in which he has accounted, the court may, upon application of a party in interest and such notice to all persons concerned as the court may direct, order and make just distribution in accordance with the directions and provisions of the will, of what shall remain after all debts and expenses have been allowed and deducted." *Page 328 
In Partridge v. Partridge, supra, Vice-Chancellor Van Fleet (at p. 436) in construing its legislative progenitor, stated: "The argument made upon this statute is, that the power which it gives to ascertain the residue or surplus remaining after the debts and expenses have been allowed and deducted, confers, by implication, power to ascertain and determine the amount of such debts and expenses. That is undoubtedly so, but the debts and expenses meant by the statute are obviously those, and those only, which the executor has paid, and for which he claims allowance in his account. The regulation prescribed by the statute is a mere accounting regulation, affecting nobody but the accountant and the beneficiaries under the will. No power is given to the Orphans Court over creditors."
The statute (R.S. 3:13-9; N.J.S.A. 3:13-9) was also put forward to warrant the exercise by the Orphans Court of the powers sought to be invoked by the petition. This statute ordains:
"The orphans' court of the county wherein letters testamentary or of administration or guardianship, or the prerogative court, if letters were granted by the ordinary, were issued may, upon petition of the executor, administrator or guardian alleging his belief that a person has possession of personal property of his decedent or ward, or knowledge of the existence or whereabouts thereof, by order, require such person to appear before it and make discovery of his possession of, or knowledge of the existence or whereabouts of personal property of the decedent or ward by the production of books, papers or securities relating to such estate, or the examination of such person and other witnesses. The court may, by order or decree, take such proceedings for the recovery of assets of the estate so discovered as may be taken in like cases in the court of chancery, and may compel obedience to such order or decree by the same process and in the same manner as orders or decrees of the court of chancery may be enforced."
The power conferred by that statutory enactment is not sufficient to encompass the controversies which abide in respect of the fund in the circumstances here existing. In re Dubois'Estate, 97 Atl. Rep. 728; Heyer v. Sullivan, 88 N.J. Eq. 165;102 Atl. Rep. 248; affirmed, 88 N.J. Eq. 595; 103 Atl. Rep. 1052.Cf. In re Fay, 129 N.J. Eq. 473; 20 Atl. Rep. 2d 57. *Page 329 
The bill has therefore been retained restrictively to determine the rights of the parties relative to the fund comprising the proceeds of the eight policies of insurance and the right of the complainant, if any, to a statutory or equitable lien upon the real estate alleged to have been fraudulently conveyed.
The complainant invokes the aid of the statute R.S. 44:7-14,15; N.J.S.A. 44:7-14, 15.
"Every county welfare board shall require, as a condition to granting assistance in any case, that all or any part of the property, either real or personal, of a person applying for old age assistance be pledged to said county as a guaranty for the reimbursement of the funds so granted as old age assistance pursuant to the provisions of this chapter, and the total amount of the assistance so granted shall become a lien upon any lands in the ownership of such person, which lien shall have priority over all unrecorded encumbrances. The county welfare board shall take from each applicant a properly acknowledged agreement to reimburse for all advances granted, and pursuant to such agreement said applicant shall assign to the welfare board, as collateral security for said advances, all or any part of his personal property as the board shall specify."
 * * * * * * * *
"At any time the county welfare board may execute and file with the clerk of the court of common pleas or register of deeds and mortgages, as the case may be, a certificate, in form to be prescribed by the State division, showing the amount of assistance advanced to said person, and when so filed each certificate shall be a legal claim against both the person and his estate and shall have the same force and effect as a judgment at law, with priority over all unsecured claims except funeral expenses not to exceed one hundred and fifty dollars. * * *"
It is serviceable to observe that other than affording the Welfare Board a lien upon any lands in the ownership of theperson for the amount of the assistance granted, the statute accords to the claim the force and effect of a judgment at law against the person and his or her estate upon the filing of the certificate. The complainant filed the certificate on March 20th, 1942, subsequent to the death of Mrs. Balabas, and by virtue of the statute the complainant claims the status of a judgment creditor of the decedent possessing the corresponding statutory priority over the claims of common creditors. But it is not perceived that the complainant *Page 330 
thereby acquired any right to or lien upon the proceeds of insurance policies definitely payable to William Balabas or to Mrs. Szabo.
Complainant also invites attention to the statutory provision,R.S. 44:4-91; N.J.S.A. 44:4-91, which reads in part:
"* * * and if any person shall die having received relief or maintenance as a poor person and having insurance upon his life, the proceeds of the insurance, after the payment of the expense of the last illness and the funeral expenses of the person, shall, if the terms of the policy so permit, be first applied to the reimbursement of the county, for the cost of the support and maintenance of the person, but no action shall lie, nor shall any appropriation of insurance be made against any estate when it is shown to the satisfaction of the court that the proceeds thereof, or the estate, are needed to prevent the widow or minor children of the poor person from becoming dependent upon the public."
The statutory phrase "if the terms of the policy so permit" cannot be ignored where as in the present case four of the policies are payable by their terms to the named beneficiaries who, as against others, are normally entitled to the proceeds.Metropolitan Life Insurance Co. v. Mangravite, supra. It follows that the provision of the statute is not applicable to the four policies in which either William Balabas or Mrs. Szabo is the designated beneficiary.
The complainant also discloses that these policies were originally payable to the estate of the assured and charges that the assured changed the beneficiary with intent to defraud the complainant as a creditor, and that the change of beneficiary should accordingly be nullified to the end that the proceeds may become subject to pre-emption by the complainant, or otherwise assets of the assured's estate.
If, arguendo, it is inferred that Mrs. Balabas "effected" the insurance on her own life, the provisions of our Insurance Act (R.S. 17:34-28; N.J.S.A. 17:34-28) curtail the endeavor of the complainant to obtain the proceeds of the policies.
"When a policy of insurance is effected by any person on his own life, or on another life in favor of a person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than *Page 331 
himself or his legal representatives, shall be entitled to its proceeds, against the creditors and representatives of the person effecting it. The person to whom a policy of life insurance is made payable may maintain an action thereon in his own name. Subject to the statute of limitations, the amount of any premiums for the insurance paid in fraud of creditors, with interest thereon, shall, however, inure to their benefit from the proceeds of the policy, but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless, before the payment, the company shall have written notice by or in behalf of some creditor, with specification of the amount claimed, claiming to recover for certain premiums paid in fraud of creditors."
This legislative declaration establishes as between beneficiaries and creditors the rights in the proceeds of life insurance policies in the circumstances therein stated. Creditors are limited to the recovery, from the proceeds of the insurance, of the amount of premiums paid in fraud of creditors by the assured or person "effecting" the insurance, subject to the statute of limitations. Borg v. McCroskery, 120 N.J. Eq. 80;184 Atl. Rep. 187; Goren v. Loeb, 124 N.J. Eq. 335;1 Atl. Rep. 2d 861; Greenberg v. Goodman, 128 N.J. Eq. 149;15 Atl. Rep. 2d 633.
The complainant as a municipal body cannot be distinguished from the creditors comprehended by the statute. Equity cannot fashion exceptions which circumvent a statute obviously intended to encircle the rights of all creditors. "Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law * * *." Hedges v. DixonCounty, 150 U.S. 182; 14 S.Ct. 71, 74; 37 L.Ed. 1044.
The proviso in the last-mentioned statute recognizes the injustice of permitting an insolvent debtor to further deplete his estate in fraud of his creditors by the payment of premiums to secure and maintain the insurance. Proctor v. MacClaskey,179 N.E. Rep. (Mass.) 600, 602. However, in the instant case, it is not evident that the assured, who is the debtor, paid any premiums whatever. Thus her estate was not in any measure thereby depleted to the detriment of the complainant or any other creditor. The premiums appear to have been paid during certain periods by William Balabas and by Caroline Szabo, neither of whom was indebted to the complainant. *Page 332 
The pleadings in this cause embody counter-claims by the defendants William Balabas and Caroline Szabo. William Balabas seeks to recover the proceeds of the policies made payable to him and also a lien on the proceeds of the other six policies, to secure reimbursement for the payments of premiums made by him on those policies. Similarly, Caroline Szabo claims the proceeds of the two policies in which she is the designated beneficiary and a lien in her favor on the proceeds of the six other policies, to afford reimbursement to her for the premiums which she personally paid.
Originally, the lien accorded a third party who had paid premiums on the policy was spoken of theoretically as "a lien by way of salvage, on a policy of assurance, for premiums paid to keep it on foot," Smith, Principles of Equity (5th ed.)343; "a lien for the amount on proceeds of the policy, on the footing of salvage moneys," Snell, Principles of Equity (5thed., 1880) 144.
The supposition that the mere payment by a third party of premiums on an insurance policy entitles such party to some right in or lien on the proceeds, is an erroneous conception of the principle. Burridge v. Row (1842), 1 Younge C. Ch. Cas.183; 62 Eng. Reprint 846; Leslie v. French (1883), 23 Ch.Div. 552; 52 L.J. Ch. 762; Gifford v. Gifford, supra; Spengler
v. Spengler, 65 N.J. Eq. 176; 55 Atl. Rep. 285; Guardian LifeInsurance Co. v. Mareczko, 114 N.J. Eq. 369;168 Atl. Rep. 642.
Additional circumstances may exist which warrant the imposition of an equitable lien on the fund, such as (a) where the advancements are made pursuant to a contract with the beneficial owner of the policy; (b) where the assessments were paid by one who reasonably supposed he was the beneficiary; (c) where a person, not being the owner of a policy, nor bound to pay the premiums, but having some interest or color of interest in it, voluntarily pays the premiums thereon and thus keeps it alive for the benefit of a third party; (d) where a pledgee or mortgagee pays the premiums to protect his security, c. Tepper v. RoyalArcanum, 59 N.J. Eq. 321; 45 Atl. Rep. 111; reversed on other grounds, 61 N.J. Eq. 638; 47 Atl. Rep. 460; Metropolitan *Page 333 Life Insurance Co. v. Mangravite, supra; Prudential InsuranceCo. v. Gleim, 131 N.J. Eq. 215; 24 Atl. Rep. 2d 511; 2Couch, Cyclopedia of Ins. Law 1036 § 350; 2 Joyce, Law ofInstruments 2259 § 1148; Pom. Eq. Jur. (5th ed.) § 1243.
The equitable principle has been invoked in favor of (1) a prior beneficiary, Grand Lodge A.O.U.W. v. O'Malley,89 S.W. Rep. 68; 114 Mo. App. 191; (2) a beneficiary until revocation of the certificate, Ryan v. Woman's Ben. Association ofMaccabees, 237 S.W. Rep. 224; 209 Mo. App. 515; (3) a beneficiary induced to make payments by fraudulent concealment,Summers v. Summers, 118 So. Rep. 912; 218 Ala. 420; (4) one of several beneficiaries, Modern Woodmen of America v. Allin,221 Ill. App. 203; affirmed, 133 N.E. Rep. 677; 301 Ill. 119;20 A.L.R. 956; (5) a subsequent beneficiary paying premiums under an invalid change, Fodell v. Miller, 44 Atl. Rep. 919; 193 Pa. 570;
(6) a creditor, Jewelers' League of New York v. Hepke,60 N.Y.S. 224; 28 Misc. 716; affirmed, 63 N.Y.S. 1110; 49 App. Div. 648,
and 166 N.Y. 605; 59 N.E. Rep. 1124; (7) an assignee of a person not having a vested interest, Connecticut MutualLife Insurance Co. v. Burroughs, 34 Conn. 305.
A critical exposition of the evidence will not here be undertaken. The evidence is productive of the conviction that William Balabas procured the issuance of the eight policies on the life of his mother (it is intimated that she was his aunt) and in whose estate he had an interest, and that he paid the premiums thereafter accruing until July, 1936, after which time Mrs. Szabo paid them until the death of the assured, in pursuance of an understanding with both the assured and her son, William Balabas. Indeed, Mrs. Szabo supposed that she would receive the proceeds of all the policies. They were in her possession. To borrow the language of the late Vice-Chancellor Backes, these defendants "having sown the fund" ought in existing circumstances "to get back their seed."
It is evident that Mrs. Balabas deceived the complainant by withholding information concerning the existence of the eight policies, but it is not apparent that the defendants William *Page 334 
Balabas and Caroline Szabo indulged in any practices which in any wise depleted or impoverished the estate of the insured decedent and impeded the satisfaction of the complainant's claim.
Essentially, the complainant charges a conspiracy to defraud. The burden rests upon the complainant to prove it. Fraud cannot be presumed, nor can it be lightly inferred. Wolosin v.Iavarone, 112 N.J. Eq. 409; 164 Atl. Rep. 488; McMaster v.Henkel, 123 N.J. Eq. 184; 196 Atl. Rep. 439.
The conveyance of the real estate was made on September 6th, 1934. The deed was recorded on November 5th, 1934, approximately a year and seven months before Mrs. Balabas applied to the complainant for relief. In 1933 Mrs. Balabas was indebted to Mrs. Szabo in the sum of $1,100 evidenced by promissory notes. In July, 1934, the Equitable Life Assurance Society, the holder of a mortgage on the real estate of Mrs. Balabas, instituted a suit to foreclose. There was then due to the mortgagee the principal debt of $2,500 and incidental arrearages aggregating $815. Mrs. Balabas was served with process in the foreclosure suit and thereupon imparted to Mrs. Szabo her financial inability to meet the obligation. Mrs. Balabas negotiated an agreement with Mrs. Szabo by the terms of which Mrs. Szabo was to purchase the property, assume the encumbrance thereon, and in consideration thereof cancel the indebtedness due on the promissory notes, pay to Mrs. Balabas the sum of $12 a month during the latter's life, and provide her with a suitable burial. The proposed agreement was brought to the attention of the mortgagee. The mortgagee consented to continue the mortgage upon the payment of $1,000 on account of the existing debt. Mrs. Szabo made the desired payment to the mortgagee with the proceeds of a mortgage loan on her own property. The deed was delivered to Mrs. Szabo, the notes were canceled, the monthly payments to Mrs. Balabas were thereafter made, and Mrs. Szabo made the eventual funeral arrangements. There was indubitably a valid and reasonably adequate consideration for the conveyance of the parcels of real estate.
There is no proof that the grantor, Mrs. Balabas, was *Page 335 
actuated by a fraudulent intent in that transaction, or that Mrs. Szabo participated in any intent to hinder, delay or defraud the grantor's creditors. It is not manifest that the grantor then had any creditor other than the mortgagee and Mrs. Szabo. Moreover, there appears to have been a valid present consideration and good faith on the part of the grantee. Hersh v. Levinson Bros.,117 N.J. Eq. 131; 174 Atl. Rep. 736.
The conveyance of the real estate will not be disturbed.
It is resolved that the defendant Caroline Szabo is entitled to the proceeds of the two policies issued by the Colonial Life Insurance Company, subject to a lien thereon in favor of the defendant William Balabas in the amount of the premiums of those two policies paid by him up to July, 1936; that William Balabas is entitled to receive the proceeds of the two policies of the Metropolitan Life Insurance Company in which he is named as beneficiary, subject to a lien thereon in favor of the defendant Caroline Szabo, in the amount of the premiums of those two policies paid subsequent to July, 1936; that the proceeds of the four remaining policies are payable to the administrator of the estate of the assured, subject to liens in favor of William Balabas and Caroline Szabo for the amount of premiums paid on those policies by them respectively. If the parties cannot agree upon the amount of premiums paid by the defendants, respectively, on the several policies, a reference will be ordered to determine the sums.
One John S. Matruska, who managed the funeral ceremonies and burial of Mrs. Balabas, was permitted to join in the bill as a party complainant. He may pursue his claim against the estate or seek recovery from Mrs. Szabo, who seemingly engaged his services in furtherance of her agreement with Mrs. Balabas. He is not entitled to an equitable lien on the insurance fund.
A decree will be advised in conformity with the conclusions expressed. *Page 336