## Walsh, Appellant, *v.* John Hancock Mutual Life Insurance Company.

Submitted March 22, 1972.   Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Alan S. Carpel,* for appellant.

*J. Bradley Taylor,* for appellee.

OPINION BY HOFFMAN, J., June 16, 1972:

This is an appeal from the award of the proceeds of certain policies of insurance issued on the life of Stephen B. Walsh, deceased.   The trial judge awarded the proceeds, Three Thousand Three Hundred and Sixty-Nine Dollars and Ten Cents ($3,369.10), to the dece-

dent's second wife. Exceptions to the trial judge's ruling were filed and heard by the court en banc. The court en banc modified the trial judge's order by awarding the sum of Two Thousand Three Hundred and Forty-Nine Dollars and Ninety-Eight Cents ($2,-349.98) to the daughter of decedent's first wife, thereby reducing the award to decedent's second wife accordingly. The sum awarded to the daughter of decedent's first wife represented the amount of the premiums paid by decedent's first wife and her daughter on the policies of life insurance.

There is no dispute as to the facts, the parties having stipulated to them. In September, 1916, Stephen B. Walsh married his first wife. Between May, 1917, and December, 1926, the John Hancock Mutual Life Insurance Company issued a number of policies on the life of Stephen B. Walsh, with Walsh's first wife named as the beneficiary. All the policies provided that Walsh could change the beneficiary.

In 1927, Walsh and his first wife separated. Prior to the separation, a daughter was born of the marriage. Walsh's first wife paid all the premiums on the insurance policies from the time of the separation until her death in March, 1965. During that time the policies were in her possession, and Walsh exercised no control over them and made no attempt to change the beneficiary.

Under the provisions of the will of Walsh's first wife, Walsh's daughter by his first wife was named Executrix and sole heir of her mother's estate. Following the death of his first wife, Walsh married his second wife, with whom he had been living since prior to 1940. Thereafter, Walsh sent an affidavit to the John Hancock Mutual Life Insurance Company requesting that the beneficiary of the insurance policies be changed from his first wife to his second wife.

Despite the requested beneficiary change, neither Walsh nor his second wife paid any of the premiums on the insurance policies. The policies remained in the possession of Walsh's daughter by his first marriage, as they had previously in her mother. The daughter alone continued to pay the insurance premiums.

In May, 1967, Walsh died and the present dispute arose as to which of the parties is entitled to the proceeds of the insurance policies. The trial judge awarded the proceeds to Walsh's second wife on the ground that she was named beneficiary. However, the court en banc modified that decree and directed that the premiums paid by Walsh's first wife and her daughter be paid back on the ground that payment of the premiums constituted an equitable lien on the proceeds of the insurance policies, the daughter inheriting the equitable interest of her mother.

Our research has disclosed no Pennsylvania cases directly on point, but the creation of an equitable lien in circumstances such as these is well established in American law. The law has, perhaps, been most clearly stated by the Court of Chancery of New Jersey in *Middlesex County Welfare Board v. Motolinsky,* 134 N.J. Eq. 323, 332-33, 35 A. 2d 463 (1944):

"Originally, the lien accorded a third party who had paid premiums on the policy was spoken of theoretically as 'a lien by way of salvage, on a policy of assurance, for premiums paid to keep it on foot,' Smith, Principles of Equity, 5th Ed., 343; 'a lien for the amount on proceeds of the policy, on the footing of salvage moneys,' Snell, Principles of Equity, 5th Ed., 1880, 144.

"The supposition that the mere payment by a third party of premiums on an insurance policy entitles such party to some right in or lien on the proceeds, is an erroneous conception of the principle. [citations omitted.]

"Additional circumstances may exist which warrant the imposition of an equitable lien on the fund, such as (a) where the advancements are made pursuant to a contract with the beneficial owner of the policy; (b) where the assessments were paid by one who reasonably supposed he was the beneficiary; (c) where a person, not being the owner of a policy, nor bound to pay the premiums, but having some interest or color of interest in it, voluntarily pays the premiums thereon and thus keeps it alive for the benefit of a third party; (d) where a pledgee or mortgagee pays the premiums to protect his security, etc. Tepper v. Supreme Council of Royal Arcanum, 59 N.J. Eq. 321; 45 A. 111, reversed on other grounds 61 N.J. Eq. 638; 47 A. 460, 88 Am. St. Rep. 449; Metropolitan Life Ins. Co. v. Mangravite, [120 N.J. Eq. 574, 188 A. 445 (1936)]; Prudential Insurance Co. v. Gleim, 131 N.J. Eq. 215; 24 A. 2d 511; Couch, Cyclopedia of Ins. Law, Vol. 2, §350, p. 1036; Joyce, Law of Instruments, Vol. 2, §1148, p. 2259; Pomeroy's Equity Jurisprudence, 5th Ed., §1243."

This principle has been applied in Pennsylvania, albeit under different circumstances. In *Fodell v. Miller*, 193 Pa. 570 (1899), our Supreme Court held that where a change in beneficiary was invalid, and the improperly named beneficiary made payments to the beneficial association believing that he would receive the proceeds of the fund after the death of the insured, the improperly named beneficiary would be entitled to recover the dues and assessments paid by him with legal interest. See *Boffa v. Bove*, 121 N.Y.S. 2d 709 (1953).

The situation in the instant case is analogous to that in *Fodell v. Miller*, supra. In both cases the party claiming a lien on the proceeds has made premium payments under the false impression that he or she was the beneficiary of the proceeds of the insurance policy. It is apparent that Stephen Walsh's first wife reasonably believed that she would receive the proceeds of the

policies at the time of Walsh's death. She had possession of the policies at all times, and these policies declared her to be the beneficiary. Stephen Walsh's daughter by his first wife also made premium payments on the policies with the reasonably held belief that her mother was the beneficiary of the proceeds, and that these proceeds would inure to her benefit as the sole heir to her mother's estate.

It should be further noted that Stephen Walsh did nothing in his lifetime to indicate to his wife or daughter that he had any intention to change the beneficiary of the policies. He made no effort to establish ownership, nor did he assume any of the responsibilities of ownership, allowing his first wife and daughter to pay all the premiums. But for these payments, the insurance policies would have lapsed and no proceeds would be available for distribution to anyone.

We hold, therefore, that where a wife separated from her husband has paid premiums to maintain an insurance policy on her husband's life, reasonably believing that she is the beneficiary, and her husband has removed her as beneficiary, she has an equitable lien on the policy's proceeds to the extent of the premiums which she has paid, with interest from the date of each payment added thereon.[1] *Salisbury v. Vick,* 368 S.W. 2d 317 (C.A. Ky., 1963); *Metropolitan Life Insurance Co. v. Haack,* 50 F. Supp. 55, 64 (D.C. W.D. La., 1943); *Mutual Life Insurance Co. v. Gervasini,* 178 Misc. 121, 125, 33 N.Y.S. 2d 278, 281-282, *aff'd,* 38 N.Y.S. 2d 362 (1942).

The order of the court en banc is affirmed.

---

[1] The lower court apparently believed that the equitable lien on the proceeds of the policies matured at the time of payment of the premiums, and that this lien could, therefore, be passed by Stephen Walsh's first wife to her daughter upon the first wife's death. This point was neither raised nor argued by counsel, and we will not disturb the holding of the Court En Banc in this regard.