**Ruth Halle ROWEN, Ethel F. Halle, and Edward Halle, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Nos. 22955–22957.**

United States Court of Appeals, Second Circuit.

Argued May 12, 1954.

Decided Sept. 9, 1954.

Edward Halle, New York City, for petitioners.

H. Brian Holland, Asst. Atty. Gen. (Ellis N. Slack, S. Dee Hanson, Special Assts. to the Atty. Gen., of counsel), for respondent.

Before CHASE, Chief Judge, and HINCKS and HARLAN, Circuit Judges.

HINCKS, Circuit Judge.

This petition for review of a Tax Court decision, 18 T.C. 874, raises the question whether the receipt by named beneficiaries (the petitioners herein) of the proceeds of certain life insurance policies subjected them to liability enforceable against them as transferees under I.R.C. § 311, 26 U.S.C.A. § 311.

The facts of the case are as follows. Louis Halle of New York City, hereinafter referred to as the decedent, on and before January 20, 1930, took out four policies of life insurance upon his own life all of which were in force at the time of his death on January 4, 1949. The face amount of the policies was, in the aggregate, $42,000; at the time of the

decedent's death on January 4, 1949, the policies had, in the aggregate, a cash surrender value of $3,109.80. In effecting the policies the decedent named his wife as the beneficiary thereof, but reserved the right at all times to change the respective beneficiaries thereof. The reserved right to change the beneficiary was subsequently exercised only by substituting his son and daughter as beneficiaries as to part of the insurance effected. At his death, the wife and these children were under designation as the beneficiaries of all the policies, none of which had ever been made payable to the decedent or to his estate. At death, the decedent was grossly insolvent: his assets were of negligible value and he was subject to a tax liability of $401,-507.56 for federal income taxes for the years 1929 to 1938, inclusive, plus subsequently accrued interest and penalties. There was no evidence and no finding of insolvency as of any date prior to the decedent's death: indeed, as to the years prior to 1939 the Tax Court expressly found that the Commissioner had failed to prove insolvency. And there was no evidence or finding that the decedent took out or maintained the policies with intent to hinder, delay or defraud his creditors, or that the premiums thereon were paid by the decedent rather than by his beneficiaries. Upon the decedent's death the face amounts of the policies were paid to the beneficiaries designated therein, the petitioners before us, who then and at all times relevant were citizens of New York.

The Tax Court sustained the Commissioner in assessing against the petitioners, to the extent of the entire proceeds of the policies which they had received on the decedent's death, the decedent's income taxes for the years 1929 to 1938 and subsequently accrued interest and penalties thereon. The mere facts that the petitioners received the proceeds of the policies "upon the death" of the decedent, who died insolvent as above stat-

ed and who prior thereto "had a right to change the beneficiaries under the policies," were held by the Tax Court to "contain the elements essential to transferee liability as provided for under section 311 of the Code." 18 T.C. 874, 881.

In Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 610, 75 L.Ed 1289, it was held that the statutory provision, which is now Section 311 of the Internal Revenue Code, "provides the United States with a new remedy for enforcing the existing 'liability, at law or in equity.' The quoted words were employed in the statute to describe the kind of liability to which the new remedy is to be applied and to define the extent of such liability." It is thus authoritatively established that the statute created no substantive rights or liabilities: the only liabilities to be enforced thereunder are those existing at law or in equity when the enforcement proceeding is begun. The statute is merely an extension, as against a transferee, of the summary collection procedures theretofore available against the transferor-taxpayer.

In determining the validity of a collection sought under Section 311, it is necessary to remember that two questions are involved, viz., (1) is the respondent against whom the collection is attempted a "transferee" within the meaning of Section 311(a) (1) and Section 311(f); and (2) is the respondent, if a transferee, under a "liability, at law or in equity," for the debts—including unpaid income taxes—due and owing from his transferor? We suggest that this feature of the Section, which is so obvious from its language, is important to bear in mind. For we have noted more than one judicial opinion which discusses the question of a transferee's liability as though only one question was involved, instead of two, with the result that necessary distinctions as to the applicable law became blurred.

■ We address ourselves to the first question. Section 311[1] is captioned

---

1. Section 311, I.R.C., 26 U.S.C.A. § 311, in so far as here pertinent, reads as follows:

"§ 311. Transferred assets
"(a) Method of collection. The amounts of the following liabilities shall,

"Transferred Assets" and provides a summary procedure for the enforcement of "the liability, at law or in equity, of a transferee of *property of a taxpayer,* * * *."[2] Thus by its reference to the "assets" and to the "property of a taxpayer" the section is directed against those to whom *assets* or *property* which belonged to the decedent and which, but for transfer, could have been distrained in his hands, have been transferred to another. Perhaps without the additional definition contained in Section 311(f) "transferees" might have been limited to those who received property of a taxpayer directly from him. But by Paragraph (f) the definition of a transferee was broadened so that it "includes heir, legatee, devisee, and distributee", thus clearly importing an intent that the new remedy provided by the Section extends to assets which once belonged to a taxpayer and passed on his death either directly or indirectly through his estate to one included in the broadened definition. But in every case the remedy is limited to "property of a taxpayer"; that is to say, to property belonging to him in his lifetime.[3]

In determining whether there has been such a transfer as will bring assets once belonging to a taxpayer within the reach of the remedy we must look to the federal tax law which created and defined the remedy. If under that law an asset is deemed to belong, or to have belonged, to a taxpayer in his lifetime, its transfer leaves it still within the possible reach of the Government for the summary collection of federal income taxes— as we held in Commissioner of Internal Revenue v. Western Union Tel. Co., 2 Cir., 141 F.2d 774. Otherwise, as to property which never belonged to the taxpayer, and hence did not become subject-matter of a transfer within the purview of Section 311.

■ Were the beneficiaries of the policies here involved "transferees" with respect to *the proceeds of the policies?* We think not. In no sense were the *proceeds* ever property of the decedent-taxpayer. Under the policy contracts the decedent never had a right to receive the proceeds. And since at his death the policies were not payable to his estate, the *proceeds* of the policies never passed to his estate and *as to the proceeds* the beneficiaries did not take as legatees or distributees of his estate. The opinion below contains no discussion which explains or supports its holding that the *proceeds* of the policies had ever constituted property of the decedent. Its holding that the petitioners are liable as transferees is tersely stated to rest on its own earlier decision in Christine D. Muller, 10 T.C. 678, and the cases of Pearlman v. Commissioner, 3 Cir., 153 F. 2d 560, and Kieferdorf v. Commissioner,

---

except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suit for refunds):

"(1) Transferees.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

\* \* \* \* \* \*

"(f) Definition of 'transferee.'—As used in this section the term 'transferee'

includes heir, legatee, devisee, and distributee."

2. Here, as elsewhere, in this opinion, emphasis unless otherwise indicated is supplied.

3. This inherent limitation of Section 311 is not affected by Treasury Regulations 111 which, in so far as pertinent, reads as follows:

"Sec. 29.311–1. Claims in Cases of Transferred Assets.—* * * The term "transferee" as used in this section includes an heir, legatee, devisee, distributee of an estate of a deceased person, the shareholder of a dissolved corporation, the assignee or donee of an insolvent person, the successor of a corporation, a party to a reorganization * * * and all other classes of distributees. \* \* \* "

9 Cir., 142 F.2d 723, certiorari denied 323 U.S. 733, 65 S.Ct. 69, 89 L.Ed. 588, cited therein.

In the Muller case it appeared that a taxpayer had died leaving unpaid income taxes. At his death he was the insured under several life insurance policies in which his wife was named as beneficiary: as such, she had received the proceeds of the policies. The court said: "The petitioner gave no consideration for the assets of the decedent which she received." That was of course so. But because "the distribution of these assets to her rendered the estate insolvent" the widow was held to be liable as a transferee of the assets distributed to her. With this, we cannot agree. What the widow received had never been property of the decedent-taxpayer. The proceeds which she received was property of the insurance companies which came to her as a third party beneficiary,—not as a "distributee" or "transferee" within the purview of Section 311.

Nor did the Pearlman decision in 153 F.2d 560, necessarily support the Muller decision, as the Tax Court seems to have thought. For the Pearlman opinion, if read against the facts of the case as found in the underlying decision of the Tax Court, 4 T.C. 34, went no further than to hold that the beneficiaries of the policies there under discussion were transferees *as to the cash surrender value of the policies.*" [4]

The Kieferdorf case, supra, which the Tax Court also cited in its Muller opinion, was one in which the insurance policies on the life of an insolvent decedent taxpayer were upon his death payable not, as here, to his widow and children, but to his *estate.* Of course the proceeds of such policies upon the death of the decedent vested in his estate and we fully agree that in that situation that the order of the Probate Judge transferring the proceeds to the widow as exempt property under California law operated as a transfer of assets *of the estate* with the

**4.** The Tax Court, in its Pearlman opinion 4 T.C. 34, discussed ten insurance policies listed serially. See 4 T.C. at page 40 of its opinion. Of these, Nos. 1, 2, 3, 4 and 9 were policies all taken out prior to the insolvency of the insured in which his wife was named as beneficiary subject to a right reserved to the insured to change the beneficiary. On Nos. 4 and 9 the wife at all times remained the beneficiary and on Nos. 1, 2 and 3, issued in 1907 and 1916, the wife was the designated beneficiary until the death of the insured in 1941 except for a two-day period in 1932 and two brief periods in 1933, as the Tax Court noted in 4 T.C. on page 47 of its opinion. As to these five policies, the Tax Court overruled the Commissioner's contention that "the assignments of the policies,—i.e., the changes of beneficiaries to the petitioner (the wife) or to the insurance companies for her benefit—were in fraud of creditors, including the Government." In so ruling it necessarily held that as to these five policies the widow was *not* a transferee, and the same ruling should, we think, have been made in the instant case. Only as to the other five policies in which the insured's executor, administrator and assigns have been designated as the beneficiaries and under which trustees for the insured's wife had been substituted as beneficiaries at a time when the insured was insolvent, did the Tax Court rule that the beneficiaries were transferees. From this decision, only the widow petitioned for review. Consequently the opinion of the Court of Appeals, 153 F.2d 560, did not touch the holding below that the beneficiary was *not* a transferee as to policies 1, 2, 3, 4 and 9. And in the appellate opinion it was not said that the beneficiaries under policies 5, 6, 7, 8 and 10 were transferees *as to the full proceeds* of the policies: nothing was said to explain how the beneficiaries could be transferees as to property never belonging to the decedent. Under the facts of that case, those policies had, in the aggregate, a cash surrender value of $51,-541, 4 T.C. at page 40, which was more than enough to satisfy the decedent's unpaid tax liability of $25,713.57. 4 T.C. at page 38. Thus on the facts the result reached by the appellate decision may be attributed to a holding that the beneficiaries were transferees only as to the cash surrender value of the policies. Thus limited, the holding does not support the T.C. decision in Muller or in the instant case. With the holding thus understood, we are in agreement as will appear later in the text of this opinion.

result that the widow became a "distributee" and hence a transferee under Section 311. But that holding does not control the situation existing either in the Muller case or the instant case in which the insurance proceeds never became an asset of decedent's estate.

The appellee cites further Neely v. Commissioner (1949 P-H T.C. Memorandum Decisions, par. 49,188), and Sullivan v. Commissioner (1950 P-H T.C. Memorandum Decisions, par. 50,000). The Neely case follows Muller without discussion. The Sullivan case calls particular attention to Regulations 111, Sec. 29–311–1.[5] The Regulation invoked follows verbatim the corresponding paragraph from Treasury Regulations 94 for the Act of 1936 which was sustained in the Kieferdorf case, supra. We agree with Kieferdorf [142 F.2d 725] that this regulation provided a "very broad interpretation" of the word "distributee" as used in Section 311. But it does not follow that even as interpreted the word is broad enough to include one as a transferee who received an asset which never belonged to the taxpayer. Without citation of authority or exposition of principle, the Tax Court assumed that the proceeds had been an asset of the decedent. Only the Tax Court, not Kieferdorf, pushed the interpretation to such lengths. Kieferdorf called attention to I.R.C. § 3797(b) which provides: "The terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined." And so, even if the Sullivan *beneficiary* could be deemed a "distributee," she was not a "transferee" of the proceeds of the policies which never were "property of the taxpayer". Since in Sullivan the proceeds were not payable to the decedent's

estate as in Kieferdorf, the Sullivan decision was not supported by Kieferdorf and, we think, was wrong.

The respondent refers to I.R.C. § 811(g) (2) whereby, solely for purposes of the Estate Tax imposed under Chapter 3 of Title 26, U.S. Code, it is provided that the amounts receivable by beneficiaries under life insurance policies "with respect to which the decedent possessed at his death any of the incidents of ownership" are to be included in the gross estate. Under this provision, as we held in Singer v. Shaughnessy, 2 Cir., 198 F.2d 178, the proceeds received by the petitioners here were to be included in the decedent's gross estate with the result that the estate tax was enforceable under I.R.C. § 900 against the beneficiaries, to the extent of the proceeds received, *by virtue of the liability expressly created* by I.R.C. § 827(b).[6] But here the respondent seeks to enforce not an estate tax under Chapter 3 of the Code but an income tax debt under Chapter 1. He is invoking Section 311 which by its express terms is limited to the collection of income tax obligations imposed by Chapter 1. And Chapter 1 contains no provision in respect to income tax collection comparable to Section 827(b) of the Code which expressly imposes liability for the estate tax on a "beneficiary, who receives * * * property included in the gross estate under section [811(f)]". The failure of section 311(f) to extend the definition of a transferee to include a "beneficiary" as was done by I.R.C. § 900 for purposes of estate tax collection, we think supports our holding that for purposes of income tax collection a beneficiary was not intended to be classed as a transferee *as to the proceeds of a policy*. It follows, as a necessary corollary, that all the cases involving liabilities *for the estate tax*, such as Chase National Bank

5. See footnote 3, supra.

6. I.R.C. § 827(b), 26 U.S.C.A. § 827(b), in so far as here pertinent, reads as follows: "(b) Liability of transferee, etc. If the tax herein imposed is not paid when due, then the spouse, transferee, trustee, surviving tenant, person in possession of the property by reason of the exercise, nonexercise, or release of a power of appointment, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under section 811(b), (c), (d), (e), (f), or (g), to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax."

v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, on which the respondent particularly relies, are not apposite to the problem here.

We conclude that none of the cases on which the respondent relies support the decision below except the line of Tax Court cases stemming from the Muller case which, as we have shown, was apparently based upon a misconception of the Pearlman and Kieferdorf holdings and which, we think, was erroneous.

After the decision below the Court of Appeals for the Sixth Circuit reached a contrary result, Tyson v. C. I. R., 1954, 212 F.2d 16, and reversed the decision of the Tax Court there under review. With that decision we are in accord and hold that *as to the proceeds of the policies* the petitioners here were not "transferees" within the meaning of Section 311.

This brings us to the question whether the appellants were "transferees" *as to the cash surrender value* of the policies. This question, we think, requires an affirmative answer. It is true that since these policies were not payable to the decedent's estate, no legal rights in the policies passed on the decedent's death to his estate and the petitioners did not take as distributees of the estate, as in the Kieferdorf case, under Section 311(f). But, as we have already noted, that definitory provision was not stated as a complete definition: it merely enlarged the requirements of Section 311(a) (1). It is indisputable that the policies as to their cash surrender values were assets of the decedent in his lifetime. Since under the terms of the policies nothing passed on his death, it is not realistic to view his death as wiping out these values. Under the policies, his death was merely a condition upon which the surrender values no longer were payable to the decedent but became merged in the greater values which the insurers were obligated to pay the beneficiaries. Thus even though, as we held earlier in this opinion, the *entire* proceeds were

never an asset belonging to the decedent, the proceeds to the extent of the cash surrender values which were included therein were property once belonging to the decedent in his lifetime and as to those values the beneficiaries were transferees.

It is true that our conclusion as to this point is not within the holding of Tyson v. C. I. R., supra, in which the policies involved were without cash surrender value. Nor is it within the Kieferdorf case, supra, in which the policies involved were payable to the decedent's estate. But neither the language nor the reasoning of these cases is in conflict with our holding. And the result we reach is in accord with the holding in the Pearlman case.[7]

■ The conclusion just reached confronts us with the second question posed above. Granted that the appellants are transferees as to the cash surrender values of the policies, are they under "liability, at law or in equity" for their decedent's unpaid income taxes? In determining this question we hold that the local state law governs. For neither by Section 311 nor by any other federal statute is the *liability* of such a transferee defined. Granted that Congress by specific legislation might have pre-empted the field, it has not chosen to do so. As a result, when Congress extended its general tax-collection procedure to the "liability" of a transferee it necessarily must have intended that the existence of liability should be determined by State law. Other than the State law, there is no source to which we may look for pertinent authority.

That was our express holding in Hatch v. Morosco Holding Co., 2 Cir., 50 F.2d 138, and Harwood v. Eaton, 2 Cir., 68 F. 2d 12. And our holding as to that point was neither modified nor overruled in our later decision in Commissioner of Internal Revenue v. Western Union Tel. Co., 2 Cir., 141 F.2d 774, as the court in the Third Circuit in the Pearlman case, supra, seemed to think. It is true that in the later case under the constraint of

---

7. See footnote 4, supra.

United States v. Joliet & Chicago R. Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658, we overruled the holding in the Harwood case that the stockholders of a lessor corporation who were entitled to receive, and did receive, periodic payments of rent directly from the lessee of all the corporate assets were not transferees of the lessor. But in overruling that holding we did not recede from the holding of our earlier decisions that the existence and extent of a transferee's liability is to be determined by local law. We held that the stockholders were transferees under the federal tax laws and that, as transferees, they were liable because under the local law and under the facts of that case the tax debtor when insolvent had made a fraudulent conveyance to its stockholders of income constructively received by it under federal tax law.

Our holding that the *liability* is governed by State law in accord with Liquidators of Exchange National Bank of Shreveport v. United States, 5 Cir., 65 F. 2d 316; Botz v. Helvering, 8 Cir., 134 F.2d 538; Tyson v. C. I. R., 6 Cir., 1954, supra. We doubt that C. I. R. v. Keller, 7 Cir., 59 F.2d 499, is to the contrary. For there the real ruling seems to have been that under the State law the respondents were not transferees, and for that reason were not under liability. The preference of the Pearlman case, supra, [153 F.2d 563] for determination of the question of liability by "general law as declared by federal courts," is one we do not share or even understand. For we know of no "general law as declared by federal courts" which defines the liability of a transferee, other than the line of Tax Court cases, above referred to, which we think were erroneously decided.

We turn therefore to consider the relevant law of New York which was the State of domicile both of the decedent and his petitioner-beneficiaries. Amongst those relevant provisions of the Insurance Law, Article 7, § 166, which we set forth in the margin,[8] the first

8. Article 7, § 166 of the New York Insurance Law provides the following:
"1. If any policy of insurance has been or shall be effected by any person on his own life in favor of a third person beneficiary, or made payable, by assignment, change of beneficiary or otherwise, to a third person, such third person beneficiary, assignee or payee shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person effecting the insurance. If any policy of insurance has been or shall be effected by any person upon the life of another person in favor of the person effecting the same or made payable, by assignment, change of beneficiary or otherwise, to such person, the latter shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person insured; if the person effecting such insurance shall be the wife of the insured, she shall be entitled to the proceeds and avails of such policy as against her own creditors, trustees in bankruptcy and receivers in state and federal courts. If any policy of insurance has been or shall be effected by any person on the life of another person in favor of a third person beneficiary, or made payable, by assignment, change of beneficiary or otherwise, to a third person, such third person beneficiary, assignee or payee shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person insured and of the person effecting the insurance. * * * The provisions of this section shall be applicable whether or not the right is reserved in any such policy to change the beneficiary therein designated, and whether or not the policy is made payable to the person whose life is insured if the beneficiary, assignee or payee shall predecease such person; and no person shall be compelled to exercise any rights, powers, options or privileges under such policy.
"2. No money or other benefits payable or allowable under any policy of insurance against disability arising from accidental injury or bodily infirmity or ailment of the person insured, shall be liable to execution for the purpose of satisfying any debt or liability of the insured, whether incurred before or after the commencement of the disability, except as provided in subsection four * * *."

paragraph provides that both an original beneficiary and a substituted beneficiary or assignee of a life insurance policy shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted.

But Paragraph 4 of Section 166 (see foot-note 8) excepts from Paragraph 1 cases of "actual intent to hinder, * *." and by its express provision applies only to substituted beneficiaries, or assignees, i. e., those who take by "assignment or change of beneficiary". Here the wife was an original, not a substituted, beneficiary. Under the Insurance Law she was entitled to the proceeds which she received as against general creditors because she was not at all within the scope of paragraph 4. We will assume, *arguendo*, that the children, who had been substituted as beneficiaries as to part of the wife's original expectancy, *were* within the general scope of paragraph 4. Even so, under the Insurance Law as against general creditors they were entitled to the proceeds because, for lack of a finding that their substitution as beneficiaries had been made "with actual intent to hinder, * * *," they were not within the exception.

From this it follows that if Section 166, paragraphs 1 and 4, of the Insurance Law is applicable to the United States, as well as to private creditors, its pro-

visions are such that the United States has no claim even as to the cash surrender values of the policies. We turn therefore to consider whether paragraph 1 of the Insurance Law is applicable to the rights of the United States.

■■ The resolution of this question depends upon the nature of the provisions of the New York Insurance Law set forth above. We think that Paragraph 1 of Article 7, Section 166, in which this case falls, is dispositive in that it states a rule of substantive law. It declares a substantive right of the beneficiary to the proceeds and his non-liability to creditors. This paragraph was enacted into law as Section 55–a of the Insurance Law and was entitled as follows: "An Act to amend the insurance law, in relation to the rights of creditors and beneficiaries under policies of life insurance". Chapter 468, Laws of 1927, New York State. We think that a reading of the second paragraph of Section 166 will further fortify our conclusion that the first paragraph is not an exemption provision.[9] The second paragraph is an *express exemption* provision while the first paragraph, which is applicable here, states that the beneficiary shall be *free from liability* as to the creditors of the deceased-insured. In this the instant case is distinguished from the Kieferdorf case which held that a state statute *exempting property from execution* is not effective to circumscribe the tax collecting powers of the federal government. Hence,

---

"4. Every assignment or change of beneficiary, or other transfer, shall be valid, except in cases of transfer with actual intent to hinder, delay or defraud creditors, as such actual intent is defined by article ten of the debtor and creditor law; in case of transfer with such actual intent, creditors shall have all the remedies provided by said article ten. Where a policy of insurance, theretofore payable to the estate of the insured, is, by assignment, change of beneficiary or otherwise, made payable to a third person beneficiary, such assignment, change of beneficiary or other transfer shall be valid, unless made with such actual intent. Subject to the statute of limitations, the amount of premiums or other considera-

tion paid with actual intent to defraud creditors as provided in said article ten, together with interest on such amount, shall enure to the benefit of creditors from the proceeds of the policy or contract * * *." McKinney's Consolidated Laws of New York, Book 27, c. 28, Part 1, Insurance Law.

9. The second paragraph of Section 166 was enacted into law as Section 55–b of the New York Insurance Law and was entitled as follows: "Exemption of disability insurance from execution." Chapter 626, Laws of 1934, New York State. It is probably due to this paragraph that the editors of McKinney label the entire Section 166 as an "Exemption" statute. See paragraph 2, footnote 8, supra.

under our view of Section 55–a the respondent herein can only recover on a showing of actual fraud.

If, contrary to the view just expressed, the Insurance Law of New York is ineffective to protect the beneficiaries from this tax-collection effort by the Federal Government, we reach no different result. In that case, the liability of the transferees must be determined from the Debtor and Creditor Law of New York. Under this law, the rights of creditors to reach property transferred by a debtor without fair consideration depend upon the debtor's insolvency at the time the conveyance was made, which is defined as the time when some payment or transfer by the debtor was made. In Central Nat. Bank of Washington v. Hume, 128 U.S. 195, 9 S.Ct. 41, 32 L.Ed 370, the Supreme Court, although there not particularly concerned with New York law, recognized the payment of premiums as fixing the date of the transfer. We think it implicit in the New York cases declarative of that law that a "transfer" under an insurance policy payable to one other than the insured or his estate occurs when the first premium is paid or when after an assignment or change of beneficiary the first premium is thereafter paid thereon.[10] There is no evidence that the decedent was insolvent when the policies were "effected" by the payment of the first premiums, or indeed at the time of payment of the subsequent premiums. It follows, we think, that independent of the Insurance Law of New York, the beneficiaries were under no liability to creditors, including the Government, for the cash surrender values. It also follows from the same reasoning and authority that even if, contrary to our holding in the first section of this opinion, the *proceeds* could be held to have once been "property" of the decedent with the result that the petitioners became transferees thereof within Section 311, the petitioners were under liability for the proceeds no more than for the cash surrender values, because of lack of proof that the decedent was insolvent when the transfer as above defined were made.

The petitioners also contended that the assessment of transferee liability in this case is barred by applicable statutes of limitation; and that, assuming that transferee liability exists, the petitioner Ethel F. Halle should be credited with her advancement of the expenses of funeral and last illness. The conclusions expressed above make it unnecessary to decide these points.

Judgment reversed.

10. See Levine v. Grey, 271 App.Div. 891, 67 N.Y.S.2d 87; In re Yaeger, D.C.W.D.N.Y., 21 F.Supp. 324.