**UNITED STATES of America,**
Appellee,

v.

**Ella Swaab BEHRENS, individually, and as Executrix of Leo F. Behrens,**
Appellant.

**No. 69, Docket 23692.**

United States Court of Appeals
Second Circuit.

Argued Nov. 17, 1955.
Decided Feb. 15, 1956.

---

Henry L. Kanter, New York City, for appellant.

Kenneth E. Levin, Atty., Dept. of Justice, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., with him on the brief), for appellee.

Before HAND, FRANK and MEDINA, Circuit Judges.

HAND, Circuit Judge.

This is an appeal from a summary judgment for the plaintiff on stipulated facts in an action against the defendant by the United States to recover income taxes, assessed against her deceased husband, Behrens, for the years 1944, 1945. The Commissioner properly assessed against Behrens the income taxes here in suit: that for 1944, in February 1948; and that for 1945, in August of the same year; and before Behrens's death on March 22, 1949, he served upon him notices of assessment and demands for payment of the taxes. At the time of his death Behrens had assets valued at less than $9000, together with "surrender values," aggregating more than $22,000, upon seven policies of life insurance whose face values were $59,000. His liabilities were over $34,000, including unpaid federal and state taxes for the years 1944, 1945 and 1946, and he had been insolvent from the beginning of 1944. He named the defendant, his wife, as his executrix and as beneficiary of all the policies, but had retained power to change the beneficiary to borrow upon the policies and to collect their "surrender value." Upon his death the insurer paid to the defendant the face value of the policies; but since Behrens had pledged them to a New York bank for a loan of some $17,000, she was obliged to pay the loan in order to discharge the pledge. Judge Bruchhausen

gave judgment for the plaintiff, distinguishing our decision in Rowen v. Commissioner of Internal Revenue, 215 F. 2d 641, 644, on the ground that in that case there had been no lien upon the "surrender values" of the policies, as there was here;[1] but holding that he would follow our reasoning that the "surrender values" were not extinguished by Behrens's death and became part of the proceeds paid to the defendant, as beneficiary. The United States does not assert that it could recover, if no lien had attached to the "surrender values" during Behrens's life; but it does insist that, since the lien attached, it was transferred *pro tanto* to the proceeds, into which the "surrender values" entered and of which they became a part.

■ In Rowen v. Commissioner of Internal Revenue, supra, although we held that the beneficiary was a "transferee" of the "surrender value," we did not hold her because we construed the phrase in 26 U.S.C. § 311(a) (1) (" 'The liability, at law or in equity, of a transferee' ") to demand a liability under the law of the state for the transferor's debts, and because the law of New York did not impose any such liability on a beneficiary. This was in accord with our earlier decisions,[2] and, although in Commissioner of Internal Revenue v. Western Union Telegraph Co., 2 Cir., 141 F. 2d 774, we had concededly in part overruled what we had held in those cases, we nevertheless held that they still remained in force so far as they held that the "liability" thrown upon a "transferee" must be one established under state law. We regard this as settled law until it is disturbed by the Supreme Court. If, however, the "surrender value" is to be regarded as passing into the proceeds, the lien passed with it, and the judgment must be affirmed. The defendant asks us to assume that in Rowen v. Commissioner of Internal Revenue, supra, a tax lien had also been imposed upon the "surrender value"; but it is apparent from the opinion, either that there had not been that notice of assessment and demand that create a lien, or, if there had, that no one thought of it as relevant.

■ Considered strictly upon the basis of the legal rights created, the lien on the "surrender values" came to an end with Behrens's death. The obligation of an insurer in a policy of life insurance is made up of a number of promises, of which one is to pay to the beneficiary the amount of the insurance—the "proceeds"—and another is to pay the "surrender value" to the insured upon his demand. The performances of these promises are not only separate, but inconsistent with each other: the payment of the "surrender value" cancels the promise to pay the "proceeds" and the promise to pay the "proceeds" assumes that the insured has not demanded and received the "surrender value." The premiums when paid become the property of the insurer and the insured has no interest in them, although it is true that in New York, as in most states, a life insurance company's finances are regulated by statute in much detail in order to protect policyholders. Moreover, the privilege granted to a bankrupt by the second proviso of § 70, sub. a(5) of the Bankruptcy Act, 11 U.S. C.A. § 110, sub. a(5) is no ground for supposing that the "surrender value" is not extinguished by the insured's death. That privilege does not in any way affect the legal relations of the parties to the contract itself; all it does is to avoid the exercise by the trustee in behalf of the creditors of the bankrupt's right to the "surrender value," as an asset to which they ought properly to be entitled. This it does on consideration that the bankrupt shall pay the trustee the value of the "surrender value" to be administered as part of the estate. It follows from what we have said that there is no logical escape from holding that the "surrender value" comes to an end on the insured's death, if we dispose of

---

1. 26 U.S.C. § 3670.
2. Hatch v. Morosco Holding Co., 2 Cir., 50 F.2d 138; Harwood v. Eaton, 2 Cir., 68 F.2d 12.

the controversy in accordance with the ordinary rules governing contracts.

■ However, in Rowen v. Commissioner of Internal Revenue, supra, 215 F.2d at page 647, we held that "it is not realistic to view his" the insured's "death as wiping out these values. Under the policies, his death was merely a condition upon which the surrender values no longer payable to the decedent became merged in the greater values which the insurers were obligated to pay the beneficiaries." There can be no doubt that the courts have spoken of the "surrender value" as though it were in fact a fund which the insurer held as a custodian for the insured. This way of looking at the situation was long ago stated by Judge Addison Brown[3] with his customary clarity, and the Supreme Court has twice quoted what he said with approval.[4] We shall not requote it in full; it is enough to excerpt the following passages. "Though this excess of premiums paid is legally the sole property of the company, still in practical effect, though not in law, it is the moneys of the assured deposited with the company in advance to make up the deficiency in later premiums * * *. So long as the policy remains in force the company has not practically any beneficial interest in it, except as its custodian, with the obligation to maintain it unimpaired and suitably invested for the benefit of the insured. This is the practical, though not the legal, relation of the company to this fund." This language obviously treats the surplus of the paid premiums that makes up the "surrender value," as a "fund" held for the insured, and, if it were such, the lien would follow it into the "proceeds." Regardless of what Judge Medina and I might have held, had the question come up as *res nova,* we think that this interpretation is imperative, and therefore we all agree that the "proceeds" were subject to the lien.

■■ The defendant also claims that in any event she was entitled to deduct the amount of the loan that Behrens had obtained from the bank, secured by a pledge of the policies. After his death she paid the loan and now seeks to be subrogated to the pledge. The tax lien, not being filed, did not indeed have priority over the pledge; but the "proceeds" were large enough to pay both claims, and it is well settled law that, when one creditor has a claim against two funds as security and another creditor has a claim against only one of them, the loan of the first will be marshalled against that fund which is security for his loan only.[6]

Judgment affirmed.

■

3. In re McKinney, D.C., 15 F. 535, 537.
4. Hiscock v. Mertens, 205 U.S. 202, 211, 212, 27 S.Ct. 488, 51 L.Ed. 771; Burlingham v. Crouse, 228 U.S. 459, 469, 33 S. Ct. 564, 57 L.Ed. 920.
6. Sowell v. Federal Reserve Bank, 268 U. S. 449, 457, 45 S.Ct. 528, 69 L.Ed. 1041; First National Bank of Rock Springs, Wyo., v. Roder, 8 Cir., 114 F. 451, 454; In re Leavitt & Grant, 2 Cir., 215 F. 901; Frank Lynch Co. v. National City Bank, 8 Cir., 261 F. 480, 486; First National Bank of Boston v. Proctor, 1 Cir., 40 F. 2d 841; Merchants' & Mechanics' Bank v. Sewell, 5 Cir., 61 F.2d 814, 816; Restatement of Security § 53 Comment c.