# UNITED STATES *v.* BESS.

No. 395.   Argued April 7, 1958.—Decided June 9, 1958.*

---

*Together with No. 410, *Bess* v. *United States,* also on certiorari to the same Court.

*John F. Davis* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Rice* and *A. F. Prescott.*

*Morris J. Oppenheim* argued the cause and filed a brief for respondent.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The United States filed this civil action in the District Court for the District of New Jersey to recover, in equity, from the beneficiary of life insurance policies the amount of federal income taxes owed by the insured at the time of his death.

Herman Bess died a resident of Monmouth County, New Jersey, on June 29, 1950. His wife, Molly G. Bess, was the beneficiary of eight insurance policies on his life from which she received $63,576.95 in proceeds. The cash surrender value of these policies at his death was $3,362.53. Seven of the policies were issued to Mr. Bess from 1934 to 1937 and the eighth, a group policy, in 1950. He retained the right until death to change the beneficiary, to draw down or borrow against the cash surrender value and to assign the policies, except that under the group insurance policy he retained only the right to change the beneficiary. Mr. Bess paid all premiums and it is conceded that none was paid in fraud of his creditors.

The federal income taxes were owing for the several years from 1945 to 1949. The assets of Mr. Bess' estate were applied to payment of the amounts owing for 1948 and 1949, but a total of $8,874.57 remained owing for 1945, 1946 and 1947 when the estate was adjudged insol-

vent by the Monmouth County Court in 1952. The amounts owing were $4,159.31 for 1945, $3,789.32 for 1946, and $925.94 for 1947.

The District Court held Mrs. Bess liable for the total taxes owing of $8,874.57. 134 F. Supp. 467. The Court of Appeals for the Third Circuit reduced the judgment to the amount of the total cash surrender value of the policies of $3,362.53. 243 F. 2d 675. We granted certiorari on the Government's petition and Mrs. Bess' cross-petition, 355 U. S. 861, and set the case for argument with *Commissioner* v. *Stern, ante,* p. 39. The Government seeks in No. 395 the reinstatement of the District Court's judgment in the full amount of the taxes owing. Mrs. Bess seeks in No. 410 the reversal of the Court of Appeals judgment in the amount of the cash surrender value.

## I.

As in *Commissioner* v. *Stern,* the Government argues that Mrs. Bess, as beneficiary of her husband's life-insurance policies, is liable for his unpaid federal income taxes.[1] We held today in the *Stern* case that recovery of unpaid federal income taxes from a beneficiary of insurance, in the absence of a lien, can be sustained only to the extent that state law imposes such liability in favor of other creditors of the insured. Under New Jersey law the beneficiary of a policy of life insurance is entitled to its proceeds against all creditors except to the extent of the amount of any premiums for the insurance paid in fraud of creditors. N. J. Stat. Ann., 1939, § 17:34–29;

---

[1] The proceeding against Mrs. Bess was not by the summary method authorized by § 311 of the Internal Revenue Code of 1939 but by the alternative method of a proceeding in equity in the District Court, *Leighton* v. *United States,* 289 U. S. 506. The courts below erred in applying § 311 in this case. As we held in *Commissioner* v. *Stern, ante,* § 311 is a purely procedural statute and has no bearing upon the liability of Mrs. Bess.

*Slurszberg* v. *Prudential Ins. Co.*, 15 N. J. Misc. 423, 192 A. 451; *Middlesex County Welfare Board* v. *Motolinsky*, 134 N. J. Eq. 323, 35 A. 2d 463. If in the instant case no lien were involved, our holding in *Commissioner* v. *Stern* would require an affirmance in No. 395 and a reversal in No. 410, since it is conceded that Mr. Bess did not pay any premiums in fraud of his creditors.

## II.

However, the Government contends that it is also seeking in this action to enforce, as to the 1945 and 1946 deficiencies, liens perfected under § 3670 of the Internal Revenue Code of 1939 against the property of Mr. Bess in his lifetime. Section 3670 provides that "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 53 Stat. 448. On July 30, 1948, and again on August 9, 1948, before Mr. Bess died, notice and demand were made upon him for payment of the deficiencies formally consented to by him as owing for 1945 and 1946. He made periodic payments on the amount owing for 1945, reducing that amount from $11,514 to $4,713.59 before his death. This balance was further reduced to $4,159.31 by a payment of $554.28 from his estate pursuant to an order of the Monmouth County Court. However, no payment on account of the $3,789.32 owing for 1946 was made either in his lifetime or after his death.

*First.* As to the tax lien theory, Mrs. Bess contends that the Government did not assert this basis for recovery before the District Court and therefore should not be heard to assert that theory in this Court. But the essential facts pertinent to a decision on the merits of the tax lien theory were stipulated in the District Court. Moreover, the issue was fully briefed and argued both in the

Court of Appeals and in this Court. We therefore see no basis for any inference of prejudice in the circumstances, and accordingly proceed to a determination of the question.

*Second.* Mrs. Bess argues that in any event no lien attached to any property of Mr. Bess since a lien does not attach under § 3670 unless and until the delinquent taxpayer "neglects or refuses to .pay the same after demand." She urges that the facts stipulated as to the payments on account of 1945 taxes made by Mr. Bess in his lifetime prove that he did not neglect or refuse to pay taxes after demand. Since, in the view we take of this case, the liability of Mrs. Bess is limited to the cash surrender value of $3,362.53, it suffices that whatever may be the case as to the 1945 taxes the requisite neglect or refusal was plainly established as to the 1946 delinquency of $3,789.32, for it is admitted that Mr. Bess neither paid nor attempted to pay anything on account of those taxes.

*Third.* We must now decide whether Mr. Bess possessed in his lifetime, within the meaning of § 3670, any "property" or "rights to property" in the insurance policies to which the perfected lien for the 1946 taxes might attach. Since § 3670 creates no property rights but merely attaches consequences, federally defined, to rights created under state law, *Fidelity & Deposit Co.* v. *New York City Housing Authority,* 241 F. 2d 142, 144, we must look first to Mr. Bess' right in the policies as defined by state law.

(a) It is not questioned that the rights of the insured are measured by the policy contract as enforced by New Jersey law. Manifestly the insured could not enjoy the possession of the proceeds in his lifetime. His right to change the beneficiary, even to designate his estate to receive the proceeds, gives him no right to receive the proceeds while he lives. Cf. *Rowen* v. *Commissioner,* 215 F. 2d 641, 644. It would be anomalous to view as

"property" subject to lien proceeds never within the insured's reach to enjoy, and which are reducible to possession by another only upon the insured's death when his right to change the beneficiary comes to an end. We therefore do not believe that Mr. Bess had "property" or "rights to property" in the proceeds, within the meaning of § 3670, to which the federal tax lien might attach. *Cannon* v. *Nicholas,* 80 F. 2d 934; see *United States* v. *Burgo,* 175 F. 2d 196. This conclusion is in harmony with the decision in *Everett* v. *Judson,* 228 U. S. 474, that the cash surrender value of a policy on the life of a bankrupt is the extent of the property which is vested in the trustee under § 70 a of the Bankruptcy Act.

(b) The cash surrender value of the policy, however, stands on a different footing. The insured has the right under the policy contract to compel the insurer to pay him this sum upon surrender of the policy. This right may be borrowed against, assigned or pledged. *Slurszberg* v. *Prudential Ins. Co., supra.* Thus Mr. Bess "possessed just prior to his death, a chose in action in the amount stated [*i. e.,* the cash surrender value] which he could have collected from the insurance companies in accordance with the terms of the policies." 243 F. 2d 675, 678. It is therefore clear that Mr. Bess had "property" or "rights to property," within the meaning of § 3670, in the cash surrender value. *United States* v. *Hoper,* 242 F. 2d 468; *Knox* v. *Great West Life Assurance Co.,* 212 F. 2d 784; *United States* v. *Royce Shoe Co.,* 137 F. Supp. 786; *Smith* v. *Donnelly,* 65 F. Supp. 415; *United States* v. *Aetna Life Ins. Co.,* 46 F. Supp. 30.

But it is contended that under state law the insured's property right represented by the cash surrender value is not subject to creditors' liens, whether asserted by a private creditor, *Slurszberg* v. *Prudential Ins. Co., supra,* or by a state agency, *Middlesex County Welfare Board* v. *Motolinsky, supra.* However, once it has been deter-

mined that state law creates sufficient interests in the insured to satisfy the requirements of § 3670, state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States. Such state laws "are not laws for the United States . . . unless they have been made such by Congress itself." *Fink* v. *O'Neil,* 106 U. S. 272, 276; cf. *Commissioner* v. *Tower,* 327 U. S. 280.[2]  The provisions of the Internal Revenue Act creating liens upon taxpayer's property for unpaid income taxes, unlike § 6 of the Bankruptcy Act, 30 Stat. 548, as amended, 11 U. S. C. § 24, do not specifically provide for recognition of such state laws. The fact that in § 3691 Congress provided specific exemptions from distraint is evidence that Congress did not intend to recognize further exemptions which would prevent attachment of liens under § 3670. *Knox* v. *Great West Life Assurance Co., supra; United States* v. *Heffron,* 158 F. 2d 657; *Shambaugh* v. *Scofield,* 132 F. 2d 345; *Smith* v. *Donnelly, supra.*

*Fourth.* The transfer of property subsequent to the attachment of the lien does not affect the lien, for "it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere . . . ." *Burton* v. *Smith,* 13 Pet. 464, 483; see *Michigan* v. *United States,* 317 U. S. 338, 340. The question therefore is whether the cash surrender values with the lien attached were transferred to Mrs. Bess as beneficiary when Mr. Bess died.

---

[2] Once a federal tax lien attaches to the insured's interest, of course, the Government, in a proper action joining the appropriate parties, can enforce the lien in the insured's lifetime and thereby recover the cash surrender value. *Knox* v. *Great West Life Assurance Co.,* 212 F. 2d 784; *Kyle* v. *McGuirk,* 82 F. 2d 212; *Smith* v. *Donnelly,* 65 F. Supp. 415. See also *Cannon* v. *Nicholas,* 80 F. 2d 934; *United States* v. *Royce Shoe Co.,* 137 F. Supp. 786. Compare *United States* v. *Metropolitan Life Ins. Co.,* 130 F. 2d 149; *United States* v. *Gilmore,* 147 F. Supp. 902.

It is argued that the right to receive the cash surrender value expires with the death of the insured and that thus no property of his passes to the beneficiary. The contention is that the beneficiary receives the proceeds of the policies as performance by the insurance company of a separate promise to pay upon the death of the insured. It is said to follow that "there is no logical escape from holding that the 'surrender value' comes to an end on the insured's death, if we dispose of the controversy in accordance with the ordinary rules governing contracts." *United States* v. *Behrens,* 230 F. 2d 504, 506–507. This is to say that the cash surrender value is no part of the proceeds, but represents merely the right of the insured to cancel the policy and thereupon receive back from the insurer the amount accumulated from premiums paid in the past and held to cover the risk to be incurred in the future.[3] Therefore it is said that the property *represented by the cash surrender value disappears on the*

---

[3] "In the level premium system of life insurance the net level premium must be higher than the monetary value of the annual risk during the early policy years, and the excess must be accumulated with interest to provide funds for payment of claims after the age is reached where the value of the annual risk exceeds the net level premium in the annual premium being paid. It is the necessary accumulation of these funds that makes possible nonforfeiture benefits. On surrender of a policy the insurer, being relieved of the obligation to provide death benefits during future years where the annual value of the risk exceeds the annual net level premium, no longer needs to retain the surrendering policyholder's contributions to the funds previously accumulated for such purpose. Since the surrendering policyholder made a contribution to these funds during the period from date of issue to date of surrender, he is *equitably* entitled to a return *equal to the prorata share* of the funds actually accumulated *from premiums paid by his group of policyholders* and no longer needed to assure solvency of the company for the protection of continuing policyholders." Krueger and Waggoner, The Life Insurance Policy Contract (1953 ed.), 194. (Footnote omitted; emphasis added.)

insured's death and no lien can survive in any part of the proceeds.

But the courts have long recognized that the surplus of the paid premiums accumulated to make up the cash surrender value should be treated for some purposes as though in fact a "fund" held by the insurer for the benefit of the insured. Judge Addison Brown stated in *In re McKinney,* 15 F. 535, 537:

> "Though this excess of premiums paid is legally the sole property of the company, still in practical effect, though not in law, it is moneys of the assured deposited with the company in advance to make up the deficiency in later premiums . . . . So long as the policy remains in force the company has not practically any beneficial interest in it, except as its custodian, with the obligation to maintain it unimpaired and suitably invested for the benefit of the insured. This is the practical, though not the legal, relation of the company to this fund."

This view was approved in *Hiscock* v. *Mertens,* 205 U. S. 202, 211, and *Burlingham* v. *Crouse,* 228 U. S. 459, 469. See also *United States* v. *Behrens, supra,* at 507. Thus in economic reality the insurer pays the beneficiary the insured's "fund," plus another amount sufficient to perform the insurer's promise to pay the proceeds on the insured's death. *Rowen* v. *Commissioner, supra,* at 647. Therefore we hold that, for purposes of § 3670, there was a transfer of property from the insured to Mrs. Bess, and that the lien attached to the property before his death followed the property into her hands.

*Affirmed.*

THE CHIEF JUSTICE, MR. JUSTICE BLACK and MR. JUSTICE WHITTAKER concur in the opinion of the Court insofar as it holds that the United States had a valid lien

against the cash surrender value of the insurance policies involved here which was enforceable against the beneficiary, Mrs. Bess. They would also affirm the judgment of the Court of Appeals on the basis of the dissenting opinion of MR. JUSTICE BLACK in *Commissioner* v. *Stern*, *ante*, p. 47.

MR. JUSTICE HARLAN, whom MR. JUSTICE BURTON joins, concurring in part and dissenting in part.

Insofar as the Government's action here rests on a theory of liability in equity for debts of another person, I agree with the Court that Mrs. Bess' liability is to be determined by reference to state law and that consequently the Government cannot prevail on this basis since state law here imposes no liability. I think, however, that the Government fares no better by asserting a right to the cash surrender values of the policies by virtue of the statutory lien created by § 3670 of the Internal Revenue Code of 1939.

In my view the correct analysis of the surrender-value issue has been given in a Second Circuit case, *United States* v. *Behrens*, 230 F. 2d 504, which also involved the enforcement of federal tax liens asserted under § 3670. There Judge Learned Hand, although he felt constrained to apply the principles of an earlier Second Circuit case, *Rowen* v. *Commissioner*,\* 215 F. 2d 641, and thereby held

---

\*In the *Rowen* case, when a member of the Court of Appeals for the Second Circuit, I subscribed to a holding that one in the position of the petitioner in *Commissioner* v. *Stern*, *ante*, p. 39, should be deemed a ". . . transferee of property of a taxpayer . . ." within the meaning of § 311 (a) of the Internal Revenue Code of 1939 insofar as cash surrender values of life insurance policies were concerned. Further reflection however has led me to question the analysis in the *Rowen* decision on this score. In any event I do not view that decision, which was concerned with the interpretation to be accorded § 311, as necessarily having application to a case involving a federal tax lien.

for the Government, observed in speaking for himself and Judge Medina:

> "Considered strictly upon the basis of the legal rights created, the lien on the 'surrender values' came to an end with Behrens's death. The obligation of an insurer in a policy of life insurance is made up of a number of promises, of which one is to pay to the beneficiary the amount of the insurance—the 'proceeds'—and another is to pay the 'surrender value' to the insured upon his demand. The performances of these promises are not only separate, but inconsistent with each other: the payment of the 'surrender value' cancels the promise to pay the 'proceeds' and the promise to pay the 'proceeds' assumes that the insured has not demanded and received the 'surrender value.' The premiums when paid become the property of the insurer and the insured has no interest in them, although it is true that in New York, as in most states, a life insurance company's finances are regulated by statute in much detail in order to protect policyholders. . . . It follows from what we have said that there is no logical escape from holding that the 'surrender value' comes to an end on the insured's death, if we dispose of the controversy in accordance with the ordinary rules governing contracts." 230 F. 2d, at 506–507.

Agreeing with this reasoning, I believe that although the cash surrender values of life insurance policies were here properly considered property of a taxpayer to which federal tax liens attached during the taxpayer's life, these values cannot be deemed to exist after the taxpayer's death. It follows that the lien terminated at the time of death. The "fund" theory of surrender values referred to in the cases cited in the Court's opinion has in my view no application when it comes to determining the

specific reach of a lien under § 3670. Accordingly, I would affirm the judgment of the Court of Appeals insofar as it denied the Government relief with respect to the proceeds of these policies above their surrender values, and reverse it insofar as it held the petitioner-respondent Bess liable to the extent of the surrender values.