Janet **FLAX**, Plaintiff,

v.

**UNITED STATES** of America, and Joseph F. J. Mayer, District Director of Internal Revenue, Defendants.

Civ. A. No. 18–59.

United States District Court
D. New Jersey.
Dec. 22, 1959.

on the insured Kleinman's rights in such policies. The crucial issue is as to the liability of Flax, the beneficiary in these insurance policies, as a transferee of the property of the insured Kleinman therein, to the United States under its income tax liens. As shown by the pleadings and pretrial, the facts are undisputed, the cause accordingly having been submitted to the Court as a question of law.

The decision herein is largely ruled by United States v. Bess, 1958, 357 U.S. 51, 78 S.Ct. 1054, 1057, 2 L.Ed. 2d 1135. The first question is as to what property rights the insured delinquent taxpayer had in the policies subject to the Government's tax lien, to which the plaintiff beneficiary succeeded as transferee. The Federal Tax Lien law, 26 U.S.C.A. § 6321, reads:

> "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

As *Bess* says, this Section

> "creates no property rights but merely attaches consequences, federally defined, to rights created under state law * * * the rights of the insured are measured by the policy contract as enforced by New Jersey law. Manifestly the insured could not enjoy the possession of the [insurance] proceeds in his lifetime. * * * It would be anomalous to view as 'property' subject to lien proceeds never within the insured's reach to enjoy, and which are reducible to possession by another only upon the insured's death when his right to change the beneficiary comes to an end. We therefore do not believe that Mr. Bess [the insured] had 'property' or 'rights to property' in the [insur-

Harkavy & Lieb, by Jerome S. Lieb, Newark, N. J., for plaintiff.

Chester A. Weidenburner, U. S. Atty., by Barbara A. Morris, Asst. U. S. Atty., Newark, N. J., United States Department of Justice, by Frank W. Rogers, Jr., Washington, D. C., Charles K. Rice, Richard M. Roberts, Washington, D. C., of counsel, for defendants.

## HARTSHORNE, District Judge.

Plaintiff Flax is the beneficiary in several life insurance policies issued by the Metropolitan Life Insurance Company on the life of her brother, Edward A. Kleinman, now deceased. Kleinman had taken a series of policy loans from the Insurance Company on his policies in 1954. In addition, he had failed to pay substantial income taxes due the defendant United States, and in 1956 and 1957 the Government had obtained statutory liens for such unpaid taxes

ance] proceeds, within the meaning of § 3670 [now § 6321] to which the federal tax lien might attach. * * *

"The cash surrender value of the policy, however, stands on a different footing. The insured has the right under the policy contract to compel the insurer to pay him this sum upon surrender of the policy. This right may be borrowed against, assigned or pledged. * * * Thus Mr. Bess [the insured] 'possessed just prior to his death, a chose in action in the amount stated, [i. e. the cash surrender value] which he could have collected from the insurance companies in accordance with the terms of the policies.' * * * It is therefore clear that Mr. Bess had 'property' or 'rights to property,' within the meaning of § 3670, in the cash surrender value." (Brackets this Court's, except the last.)

As above indicated, however, the insured's rights in the cash surrender value of the policies could be borrowed against from the Insurance Company, and this the insured had done. When borrowed against, if the insured had wished to take the cash surrender value on surrendering the policy, even up to the very instant before his death, he could only receive its then cash surrender value, plus a surrender dividend, less the amount of these loans, with interest. Such were the insured's "rights to property" in the insurance policies. This is covered by the policy loan provision, Section 14 II (a):

"Cash Surrender Value—To receive a Cash Surrender Value which shall be equal to the cash value according to the table on page 5, plus the reserve on any paid-up dividend additions and plus the amount of any dividend accumulations then outstanding to the credit of this Policy, *and less any indebtedness, including interest then accrued, for which this Policy is security to the Company.*" (Italics this Court's.)

See also Everett v. Judson, 1912, 228 U.S. 474, 33 S.Ct. 568, 57 L.Ed. 927.

According to the agreed on figures attached to the complaint herein, the total gross cash surrender value at insured's death, including surrender dividends, was $38,962.21. The total policy loans made by the Company on these policies at the instant before insured's death was $23,234.27. Thus the net amount to which the insured would have been entitled, had he surrendered his policies the instant before his death, is $15,727.94.

This was, therefore, the amount to which the beneficiary succeeded as transferee of the property of the insured in these policies, according to *Bess*, where our highest Court says:

"The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere * * *.'

* * * * * *

"But the courts have long recognized that the surplus of the paid premiums accumulated to make up the cash surrender value should be treated for some purposes as though in fact a 'fund' held by the insurer for the benefit of the insured. * * * Thus in economic reality the insurer pays the beneficiary the insured's 'fund,' plus another amount sufficient to perform the insurer's promise to pay the proceeds on the insured's death. Rowen v. Commissioner, supra, 2 Cir., 215 F.2d 641, at page 647. Therefore we hold that, * * * there was a transfer of property from the insured to Mrs. Bess [the beneficiary] and that the lien [of the U.S.] attached to the property before his death followed the property into her hands." (Brackets this Court's.)

■ Insofar as plaintiff beneficiary has received proceeds of the policy, which included a portion of the in-

sured's rights to property therein, subject to the defendant Government's tax lien, as above, that amount must be used to satisfy that lien by payment accordingly to the defendant United States. Nor, for the reasons stated in *Bess*, does the New Jersey Creditors statute, N.J.S.A. 17:34–28, prevent the Government from enforcing its tax lien.

Attached to the complaint herein are the actuarial amounts involved, and the complaint itself, in paragraph 8, alleges, and the answer admits, (a) that the Insurance Company was paid in full for its loans in the amount of $23,234.27; (b) that the Government was paid "upon account of the taxes due" $14,948.06, this being the cash surrender value of the policies at the instant before insured's death, less the policy loans, but not including the surrender dividend of $779.88; (c) that the plaintiff was paid $11,720.29; (d) that an amount representing interest was divided between plaintiff and defendants, (e) with a balance of $3,565.98 being held in escrow, to be paid according to the judgment of this Court.

It thus appears that the Government, save for the amount of the above surrender dividend of $779.88, has been paid in full the value of the property rights which the insured had in all these policies the instant before his death, which property rights were transferred to the plaintiff beneficiary, as above. In other words, save for the amount of this surrender dividend, apparently overlooked by the parties, the defendant Government has received the entire property of the insured on which its lien existed. Furthermore, the Insurance Company has similarly received the full amount of its policy loans, with interest. In short, the Insurance Company, having been paid in full, has no further claim, and, when the Government is paid the amount of the above surrender dividend, it will have been fully paid all the property rights of the insured in the policies upon which its lien exists. Both the Insurance Company and the Government will then have been fully

paid out of a sum equal to the gross cash surrender value, including the surrender dividend. Thus the much mooted question as to the marshalling of adverse claims, as in United States v. Behrens, 2 Cir., 1956, 230 F.2d 504, becomes inapplicable. Since no question is involved as to the marshalling of adverse claims, provision 11 of the policy, which gives the Insurance Company the option, after the death of the insured, to collect its policy loans from the policy proceeds, itself becomes immaterial to the issue. Additionally, it should be noted that, in *Behrens*, the loans on the policy were not, as here, policy loans by the Insurance Company, but loans by a bank on the assignment of the insurance policy, which creates a very different situation.

Accordingly, out of the amount of $3,565.98 held in escrow, the amount of $779.88 will be paid to the defendant United States. The balance of $2,786.-10 will be paid to plaintiff Flax.

The facts herein stated and the conclusions of law herein expressed shall be considered the findings of fact and the conclusions of law required by F. R.Civ.P. 52, 28 U.S.C.A.

An order may be entered accordingly.